**James Howard HARRINGTON and Barbara Ruth Harrington, Appellants,**

v.

**Hon. Henry G. SCHUBLE, Judge, 245th District Court et al., Appellees.**

**No. A2490.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Oct. 8, 1980.

Michael R. Milligan, Johnson & Milligan, Thomas E. Lucas, Houston, for appellants.

William D. Soffar, Houston, for appellees.

Fred A. Collins, Houston, for amicus curiae.

Before J. CURTISS BROWN, C. J., and PAUL PRESSLER and JUNELL, JJ.

J. CURTISS BROWN, Chief Justice.

Barbara Harrington filed for divorce against James Harrington on April 7, 1978. James Harrington filed his answer and cross-action requesting that the homestead of the parties be sold during the pendency of the action because he was unable to make the house payments. On September 12, 1978, the trial court entered temporary orders in which it appointed William A. Soffar receiver of the homestead. The order also purported to suspend all mortgage payments due and owing on the house.

The final decree of divorce directed the receiver to sell the house and distribute the proceeds in accordance with the decree, that is: pay the first lien mortgage, the second lien mortgage, the tax debt owed to the Internal Revenue Service, and the balance to be divided between the parties with 70% going to the wife and 30% to the husband.

An application for sale of real property was filed on October 17, 1979, and an order of sale of real property was signed by the court on the same day. Although this order recites that a hearing was held and notice was given, it appears that, in fact, there was no notice or hearing.

The receiver entered into an earnest money contract with John B. Goss on or about April 24, 1980. On May 29, 1980, the receiver filed a report of sale in blank with the Goss earnest money contract attached thereto. During this period the Harringtons found another purchaser, Hector R. Alvarez, and entered into an earnest money contract with him. The receiver also filed a report of sale in blank with the Alvarez earnest money contract attached thereto.

James Harrington subsequently filed an objection to the Goss sale and a motion to confirm the Alvarez sale. A hearing was held on June 2, 1980 on both reports of sale and on the objection to the Goss sale. The court overruled Harrington's objections, approved the Goss sale, and then recessed the hearing until after the closing, which was held the same day.

On June 6, 1980, James Harrington filed a supplemental objection to the Goss sale. The hearing was resumed June 9, 1980 and the Court confirmed the Goss sale. The receiver then filled in the blanks of the report of sale previously filed and the court signed a decree confirming the sale of real property. This decree authorized a conveyance pursuant to the terms of the attached earnest money contract, the same contract that was attached to the report of sale. Later, on the same day, the court signed an order which stated that "John B. Goss has instanter possession..." of the house. This order was entered without any notice to appellants or appellants' attorneys. Thereafter, on June 11, 1980, deputies of the constable appeared at the house to remove appellants' personal property. On the same day, James Harrington filed a motion for leave to file a writ of mandamus and/or writ of prohibition in this court to prevent the deputies from further removing any property. This court on June 11, 1980 granted a temporary order allowing the writ to be filed and staying the trial court's order of June 9, 1980 confirming the sale and the order of June 9, 1980 declaring Goss to have instanter possession pending the outcome of this appeal. Appellants have perfected appeal as well as seeking original relief to preserve our jurisdiction.

Appellants contend in their first point of error that the trial court erred by signing an order on an application for sale because there had been no notice or hearing conducted. We agree. The application for sale was filed October 17, 1979, without stating any terms, conditions, or prospective

buyer. The order authorizing the sale was signed the same day. There was never any application or order pertaining to a specific buyer. Thus, appellants had no opportunity to complain about the sale until the hearing on June 2, 1980, the time the report of sale was filed.

■ Generally, "the rules of equity . . ." govern all matters regarding receivers and the powers of the court in relation thereto. Tex.Rev.Civ.Stat.Ann. art. 2319 (Vernon 1971). To conform with the rules of equity there should have been an application for sale pertaining to a specific buyer. Notice should be given to all interested parties and a hearing conducted on the sale. Appellants' first point is sustained.

■ Since we must reverse and remand for further proceedings, we shall address the other points of error. Appellants further contend that the trial court should have confirmed the Alvarez sale because it would be more equitable and beneficial to the parties. Generally, the inadequacy of price in a receiver's sale is not, in the absence of facts or circumstances showing fraud or irregularity, sufficient ground for setting aside the sale. *Mergenthaler Linotype Co. v. McClure*, 16 S.W.2d 280 (Tex. Com.App.1929, judgmt. adopted). The circumstances demonstrate that there was sufficient irregularity to set aside this sale on direct appeal. First, the Goss sale was approximately for $3,000.00 less than the Alvarez sale. More importantly, the Alvarez sale provided for a substantially larger cash down payment ($57,750.00) than the Goss sale ($25,000.00). The Alvarez sale provided for an assumption of the first lien, and would allow the appellants to receive cash proceeds from the sale. Whereas in the Goss sale, the appellants did not receive any cash from the proceeds, but instead received two promissory notes totalling $21,671.71 payable over 15 years. Furthermore, the two notes were secured by two separate deeds of trusts; therefore, whichever deed of trust was recorded first would be superior to the other. In the event of a foreclosure under the superior deed of trust, the subordinate lien would be lost.

■ Appellants also urge that the Goss sale was invalid because it was not in compliance with the decree confirming the sale. This decree authorized the sale upon compliance with the attached earnest money contract, and, in fact, the sale was made on different terms. The earnest money contract provided for a second lien note in the sum of $29,558.09. However, the notes at the closing were for $6,501.51 and $15,170.20, a sum of $21,671.71. Thus, the notes at the closing were for $7,886.29 less than the second lien note provided for by the decree. The sale, therefore, was not in compliance with the decree.

■ Appellants claim in their fourth point of error that an adequate report of sale and an accounting was not filed setting forth the exact amount of sales proceeds to be received by the parties, and the claims to be paid from the proceeds. There was nothing filed with the trial court showing what claims were paid. On the contrary, the closing documents indicate that several claims were paid from the cash proceeds without any authorization, explanation or documentation, which is contrary to the original divorce decree. No claims were filed with the trial court requesting payment from the proceeds. Appellants' fourth point is sustained.

■ Appellants further contend that the receiver's fee should not have been paid because it was inequitable and because there had not been an accounting. The full award of receiver's fees should not be made until there has been a final accounting and discharge. *Bergeron v. Sessions*, 561 S.W.2d 551 (Tex.Civ.App.–Dallas 1978, writ ref'd n. r. e.). We therefore hold that there must be a final report and an accounting before the receiver's fees are to be paid.

■ Since there will be further proceedings, we hold that some instruction may be necessary. In receivership proceedings regarding the sale of a homestead, certain steps should be followed. First, an application for sale, complete with definite terms, price and parties, should be filed.

Then, after sufficient notice has been given to all interested parties, a hearing should be held on the application. An order of approval or disapproval of the sale by the trial court would follow. After reasonable notice to all interested parties, a report of the approved sale should be filed. Then, before the distribution of any funds, there should be a confirmation of the sale, to insure that the sale was in compliance with the original approval of order and to authorize distribution of the proceeds. Finally, the customary and reasonable expenses and fees should be paid. However, no unsecured creditors claims should be paid from the proceeds of the sale of the homestead. *Delaney v. Delaney*, 562 S.W.2d 494 (Tex.Civ. App.–Houston [14th Dist.] 1978, writ dism'd).

█ Finally, appellants contend that the trial court erred in signing the ex parte order of June 9, 1980 stating that Goss had instanter possession of the house. They contend that Goss was not a party to the action and therefore the court had no authority to enter such an order. We agree. *Edwards v. Hatch*, 106 S.W.2d 741 (Tex.Civ. App.–Waco 1937, no writ). Furthermore, appellants had no notice of the order nor was there any motion to enter it. The trial court found that the entry of such order had been improper.

The order of the trial court dated June 9, 1980 declaring that Goss has instanter possession, and the decree dated June 9, 1980, confirming the Goss sale, is reversed and the sale is vacated and the cause is remanded for further proceedings in the trial court. We also instruct the trial court and the receiver to restore the personal property of the appellants insofar as the court has the power to do so, pending a final adjudication of the cause.