Robbie HOLLOWAY, Appellant,

v.

Pat S. HOLLOWAY, Appellee.

No. 05–82–00249–CV.

Court of Appeals of Texas, Dallas.

Dec. 27, 1983.

On Rehearing March 26, 1984.

Rehearing Denied March 26, 1984.

Second Rehearing Denied April 30, 1984.

G. LeRoy Street, Dallas, for appellant.

Louis P. Bickel, Linda F. Jenkins, of Bickel & Case, Dallas, for appellee.

Before GUITTARD, C.J., and STOREY and VANCE, JJ.

GUITTARD, Chief Justice.

In this divorce proceeding the principal issues are the division of the community estate and the community or separate character of corporate stock and various oil and gas interests acquired during the marriage. Both parties have appealed. The husband, Pat Holloway, contends that the trial court erred in disregarding jury findings that the stock in Humble Exploration Company, Inc., and Sterling Pipeline, Inc., a working interest in the D.B. Johnson Well, and two oil run receivables are his separate property. We hold that there is some evidence supporting the jury's findings that the corporate stock and the interest in the D.B. Johnson well are the husband's separate property. Consequently, we reverse and remand for a new trial on the issues concerning the property division.

In response to special issues, the jury found that all of the disputed items of property were the separate property of the husband. The trial court granted the wife's motion to disregard the jury's answers on the ground that there was insufficient evidence to rebut the presumption of community. Among the findings disregarded in the decree was a finding that the community property should be divided 70 percent to the husband and 30 percent to the wife. Instead, the court found that the division should be 59.5 percent to the husband and 40.5 percent to the wife. Both parties complain of this division. The husband also complains of certain "findings of fact and conclusions of law" which the court recited in the decree.

*The Humble Exploration Company Stock*

■ We agree that the evidence is sufficient to support the jury's finding that the Humble stock was purchased with Pat Holloway's separate funds and was, therefore, his separate property. Holloway testified that he paid for his initial subscription to the stock by a check drawn on an account in the Republic National Bank styled "Pat S. Holloway Oil & Gas Account," which was opened in 1969 or 1970 for the purpose of depositing income received from royalty interests given to him by his family so that funds subject to the depletion allowance could be kept separate from his earnings from his law practice and could easily be accounted for in income tax reporting. No salaries or legal earnings, he said, were deposited in this account before 1979. All deposits, he said, were made by his wife Robbie, who acted as his bookkeeper, and she was instructed to deposit only separate royalty monies in this account. His initial subscription to stock in Humble Exploration Company was paid in 1974 by a check

drawn on this account, as was his acquisition of additional stock in 1975.[1]

A photocopy of the check used for the first of these purchases was offered in evidence over Robbie's objection that the original had not been produced or accounted for. Since there is no contention that the copy was not accurate, it was admissible under article 3731c of the Texas Revised Civil Statutes (Vernon Supp.1982–83), which provides that such a copy is admissible without accounting for absence of the original "where there is no bona fide dispute as to its being an accurate reproduction of the original."

Robbie contends that this evidence does not raise a fact issue concerning the separate character of the Humble stock in view of the rule established by such cases as *McKinley v. McKinley*, 496 S.W.2d 540, 543 (Tex.1973), and *Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex.1965), that the party seeking to overcome the presumption of community property has the burden to trace and clearly identify the property claimed as separate. She argues that Pat's self-serving testimony concerning the character of the funds in the "Pat S. Holloway Oil & Gas Account" amounted to no more than a scintilla and was properly disregarded because of his failure to establish the separate character of the funds by bank records of deposits and withdrawals.

We know of no authority holding that a witness is incompetent to testify concerning the source of funds in a bank account without producing bank records of the deposits. Any doubt cast on the credibility of Pat's testimony by his failure to produce the records or by his subsequent designation of the account as community in his inventory must be considered resolved by the jury, which might also have considered that his testimony was not disputed by Robbie, who actually made the deposits. Accepting Pat's testimony as true, as we must in the light of the verdict, we are unable to say that it was not clear and definite enough to identify the source of the funds on deposit and to exclude any commingling with community funds at the time of the Humble stock was acquired.

We do not regard our present holding as inconsistent with *Harris v. Ventura*, 582 S.W.2d 853, 856 (Tex.Civ.App.—Beaumont 1979, no writ). In *Harris* a widow claimed certain bank accounts as her separate property, but the only evidence concerning the source of the funds was her testimony that "[s]ome was gifts and some may have been my social security checks, I don't remember." This evidence, which did not even purport to establish the separate character of all the funds on deposit, was obviously insufficient to overcome the presumption of community property.

### The Sterling Pipeline Stock

Like Humble, Sterling Pipeline Company was organized and capitalized during the marriage. Pat Holloway, the sole shareholder, initially capitalized Sterling in 1979 with $3000, which, as he testified, was paid out of his "Pat S. Holloway, Separate Property Account," an account opened with the proceeds of a loan from Republic National Bank. Pat contends that evidence of his intention to repay the loan out of his separate property establishes the proceeds of this loan as his separate property, and thus establishes the separate character of the Sterling Pipeline stock. In support of this contention he relies on *Edsall v. Edsall*, 240 S.W.2d 424 (Tex.Civ.App.—Eastland 1951, no writ).

We do not agree that the unilateral intention of the borrowing spouse is sufficient to establish the separate character of borrowed funds. Nevertheless, we conclude that in this case there is evidence of an agreement by the bank to look only

---

1. We note that the Humble Exploration Company in which Pat owned stock at the time of the divorce was not the original corporation which he organized in 1973, but was another of the same name which had acquired the assets of the original corporation. Since neither party asserts that this change in the corporate structure has any bearing on ownership of the stock, we need not trace the present stock back to the original shares.

to his separate property for repayment. This evidence supports the jury's finding that the stock so acquired is his separate property.

■ Despite some judicial expression to the contrary, the law was settled in *Gleich v. Bongio*, 128 Tex. 606, 99 S.W.2d 881, 886 (1937), that the intention of the spouses cannot control the separate or community character of property purchased on credit or of funds borrowed during the marriage and that such property is community unless there is an express agreement on the part of the vendor or lender to look solely to the separate estate of the purchasing spouse for satisfaction of the indebtedness. Though criticized,[2] this rule has been repeatedly reaffirmed. *Broussard v. Tian*, 156 Tex. 376, 295 S.W.2d 405 (1956), *cert. denied*, 353 U.S. 941, 77 S.Ct. 811, 1 L.Ed.2d 758 (1957); *Dorfman v. Dorfman*, 457 S.W.2d 91, 95 (Tex.Civ.App.—Waco 1970, no writ); *Beeler v. Beeler*, 363 S.W.2d 305, 307 (Tex.Civ.App.—Beaumont 1962, writ dism'd); *Dillard v. Dillard*, 341 S.W.2d 668, 671 (Tex.Civ.App.—Austin 1960, writ ref'd n.r.e.); *Goodloe v. Williams*, 302 S.W.2d 235, 237–38 (Tex.Civ. App.—Texarkana 1957, writ ref'd); *Comment, Agreements that Property Bought on Credit During the Marriage Will be Separate*, 15 BAYLOR L.REV. 66 (1963).

In light of this rule, we must examine the evidence to determine whether it would support a finding of such an agreement between Pat Holloway and the bank. Although there is no direct testimony of an express agreement, we conclude that there is evidence to support such a finding. Pat testified that he opened the "Pat S. Holloway, Separate Property" account with the proceeds of a loan of $10,000 from Republic National Bank. The loan papers were admitted in evidence. They include a promissory note and a security agreement from Pat to the bank, each dated May 10, 1979, and signed "Pat S. Holloway, Separate Property." A statement of purpose for the

loan on a bank form, also signed, "Pat S. Holloway, Separate Property," recites the purpose of the loan to be "Equity in pipeline venture." This statement refers to the collateral specified in the security agreement and is certified by an officer of the bank on May 10, 1979. An affidavit by Pat Holloway, dated May 16, 1979, states that all the securities listed as collateral in the security agreement, valued at more than $40,000, are his separate property, having been acquired before his marriage to Robbie, and that the affidavit is made with knowledge that it will be relied on by the bank in making the loan for his separate account to be secured by the securities listed and in order to induce the bank to make a loan to him for which the community estate shall not be liable. Pat testified that he delivered these papers to the bank at the time of the loan transaction. There is also a deposit slip for $10,000 in the "Pat S. Holloway, Separate Property" account, dated May 17, 1979, although no check in this account for the $3000 paid for the Sterling Pipeline Stock was offered in evidence.

This evidence, in our view, is sufficient for the jury to infer that by accepting these papers as the basis for a loan to "Pat S. Holloway, Separate Property," the bank agreed to look solely to Pat's separate property for repayment of the loan and that Pat purchased the stock in Sterling Pipeline with the proceeds of this loan. Consequently, we hold that the evidence supports the finding that this stock is his separate property.

*Compensation to Community for Husband's Time and Effort*

In view of our holding that the evidence supports the jury's findings of the separate character of the Humble Exploration and Sterling Pipeline stock, we must consider the consequences of these findings. Robbie argues alternatively that the stock in both Humble and Sterling Pipeline repre-

---

**2.** Fritz, *Marital Property—Effects of Recitals and Credit Purchases*, 41 TEXAS L.REV. 1, 8–28 (1962).

sents an ownership interest in corporate assets acquired by the community labor of one of the spouses, and, therefore, the trial court was correct in finding the stock of both companies to be community. This question of the increase in value of separately owned corporate shares as a result of the time, toil and effort of one of the spouses was recently considered by the supreme court in two cases.

In *Vallone v. Vallone*, 644 S.W.2d 455 (Tex.1982), the court held that a right of reimbursement arises when community time, talent and labor are used to enhance a spouse's separate estate beyond whatever care, attention, and expenditure are necessary for the proper maintenance and preservation of the separate estate, without the community receiving adequate compensation, but that the party claiming reimbursement has the burden of pleading and proving that the expenditures and improvements were made and that they are reimbursable. *Vallone*, at 459. The reimbursement theory is reaffirmed by the supreme court in *Jensen v. Jensen*, 665 S.W.2d 107 (Tex.1983), which rejects the theory that any increase in the value of separate stock as a result of the time and effort of the owner spouse becomes community property. *Jensen* holds that the measure of compensation to the community is the value of the time and effort expended by either or both spouses to enhance the separate estate of either, less the remuneration received in the form of salary, bonus, dividends, and other benefits. The court further holds in *Jensen* that the non-owning spouse had the burden to affirmatively plead and prove that she was entitled to such reimbursement, and that the trial court's finding that the husband had received adequate salary, dividends, and bonuses from his separately owned corporation supported its decree denying reimbursement for the increased value of the stock.

The application of these two holdings to the present case is clear. There is evidence that as a result of the time and effort of Pat Holloway the value of his stock in Humble Exploration rose from $1,000 to $30,000,000, and the value of his stock in Sterling Pipeline rose from $3,000 to $60,000,000. Nevertheless, Robbie Holloway failed to carry her burden to plead, prove, and request jury findings on the value of the time and effort expended by Pat over and above the salaries, bonuses, and dividends received.

In this court Robbie insists that the issue of the community's entitlement was tried by implied consent and that her claim was conclusively established. We cannot agree. Robbie never asserted in the trial court, or even in this court until after submission, that the community was entitled to reimbursement or compensation for enhancement of Pat's separate property. Rather, she has until now insisted that this stock is entirely community, and she presented evidence of Pat's time and effort in managing the affairs of these corporations in support of that theory. Although the evidence may be undisputed that a major portion of the enhanced value was the result of Pat's managerial efforts, no special issue was submitted or requested that would have elicited a finding as to what amount of compensation would be proper or what portion of the enhanced value was attributable to Pat's efforts over and above the value of the salaries, bonuses, and dividends received. The amount of that claim in the present case is a question of fact which the trial court could not properly resolve without submitting it to the jury. We cannot deem a finding on this unsubmitted issue to have been made by the trial court in support of its judgment because the judgment does not allow the community compensation, but rather divides the stock as if it were entirely community. A finding may not be deemed made in support of the judgment when the trial court has disregarded the jury's findings. *Rodriguez v. Higginbotham-Bailey-Logan Co.*, 138 Tex. 476, 160 S.W.2d 234, 235 (1942).

### Judicial Estoppel

In the divorce decree, the trial court recited various "findings of fact"

which Pat Holloway attacks in this appeal. In a jury case, findings of fact by the court have little effect because all independent grounds of recovery or defense not conclusively established by the evidence and upon which no issue is given or requested are deemed waived. TEX.R.CIV.P. 279. Consequently, we consider these recited findings only for the purpose of determining whether the facts recited are conclusively established and support the decree as a matter of law.

Among the findings recited is that Pat Holloway is judicially estopped by prior sworn statements in which he characterized the stock of both Humble and Sterling Pipeline as community property. By a "cross point," which would be more appropriately termed a counterpoint, Robbie contends that this finding justified the trial court in setting aside the jury's findings that this stock was Pat's separate property.

■■■■■ We conclude that no estoppel as a matter of law has been established. Apparently Robbie confuses two similar but distinct doctrines, judicial estoppel and judicial admission. Judicial estoppel arises from statements made in a prior judicial proceeding by the party against whom the estoppel is invoked and inconsistent with his position in the present suit. *Aetna Life Insurance Co. v. Wells,* 557 S.W.2d 144, 147 (Tex.Civ.App.—San Antonio 1977), *writ ref'd n.r.e. per curiam,* 566 S.W.2d 900 (Tex.1978). The party against whom it is invoked must have successfully maintained the prior, inconsistent position. *Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292, 295–96 (1956); *Moore v. Neff,* 629 S.W.2d 827, 829 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *cf. Bocanegra v. Aetna Life Insurance Co.,* 605 S.W.2d 848, 850 (Tex. 1980). There is no evidence here that the earlier proceeding ended favorably to Pat.

■■■■■ Nor can Robbie rely on the theory of judicial admission, which applies when a party in the instant case unequivocally testifies to facts contrary to his position. *United States Fidelity & Guaranty Co. v. Carr,* 242 S.W.2d 224, 229 (Tex.Civ. App.—San Antonio 1951, writ ref'd). To be conclusive against him, the admission must be made in the same proceeding or perhaps in another proceeding involving the same parties. *Aetna,* 557 S.W.2d at 147; *Mahoney v. Mahoney,* 103 S.W.2d 459, 462 (Tex. Civ.App.—Amarillo 1937, writ ref'd). Although the record here is not entirely clear, we are unable to determine that any of the testimony referred to was given in the present suit, or even in another proceeding involving the same parties. Consequently, it is not conclusive against Pat in this suit.

### Constructive Trust

Another "finding of fact" attacked on this appeal is one to the effect that Pat Holloway, as manager of the community estate, unjustly enriched his separate estate by diverting community funds into separate corporations, and, therefore, a constructive trust should be imposed in Robbie's favor on a portion of the stock in those corporations. In holding that the evidence supports the jury's finding of the separate character of this stock we have already dealt with the question of whether it was initially acquired by the use of community funds. Robbie now contends, however, that a constructive trust was properly imposed because in the incorporation and management of both companies Pat breached a fiduciary duty owed to the community estate. She argues that Pat used both corporations so as to defraud his wife of her community interest in that he diverted a community opportunity by using separate funds for this purpose when there were adequate funds in the community estate.

■■■■ We conclude that the evidence does not establish as a matter of law the requisites of a constructive trust. In engaging in a new and speculative venture and borrowing funds for that purpose, a married entrepreneur may well consider whether the risk is one that should properly be undertaken by himself alone without jeopardizing the assets of the community estate. If the venture turns out to be successful, as it did here, he cannot be held guilty of breach of a fiduciary duty in the

absence of evidence of an intent to defraud. We find no such evidence in this record. At most, the evidence would raise a fact issue on the point, and in the absence of any request for special issues, this independent *ground of recovery is deemed waived* under rule 279.

### D.B. Johnson No. 1 Well

■ One of Pat Holloway's points concerns the 11% interest he purchased in the D.B. Johnson No. 1 well. We conclude that on this issue, also, the evidence supports the finding that the interest was purchased with Pat's separate funds. Pat testified that he received the funds to purchase this interest from a distribution of his father's estate. He deposited this distribution in a separate property checking account. On June 5, 1980, he purchased this interest with a check for $75,000 and gave a check on an account he concedes contained community funds. Pat explained that he used this account because the sellers required immediate payment and his separate account checkbook had been taken by Robbie, but he knew that the funds in the community account were insufficient to pay the check, and, on June 17, he transferred $75,-000 from his separate account into the community account. The check and the telephone transfer order were admitted into evidence.

This testimony, taken in the light most favorable to the verdict, supports a finding that Pat Holloway has adequately traced the source of the funds used to purchase this interest to his separate property. If evidence is produced that clearly traces the source of the funds, the presumption of community is overcome. *Tarver,* 394 S.W.2d at 783; *Harris v. Ventura,* 582 S.W.2d at 855.

■ The cases relied upon by Robbie, *e.g., Gibson v. Gibson,* 614 S.W.2d 487 (Tex.Civ.App.—Tyler 1981, no writ), concerned situations in which the community and separate funds in a bank account became so commingled that it was impossible to trace the source of either. *See also, Harris v. Ventura,* 582 S.W.2d at 855. In the instant case, Pat put a certain sum in the community account to cover a specific check that was subsequently cashed, a simple in-and-out transaction. The community account served only as an instrumentality for transmitting his separate funds. A showing that community and separate funds were deposited in the same account does not conclusively establish that the entire amount is community when the separate funds may be traced. *See, e.g., Lindsey v. Lindsey,* 564 S.W.2d 143, 146 (Tex. Civ.App.—Austin 1978, no writ). The amount of community funds actually in the account is immaterial.

■ Robbie also contends that this interest was purchased on community credit because the initial check became a community debt when it was drawn on a community account. Payment by check does not necessarily change a cash purchase into a credit transaction. *Ranchers and Farmers Livestock Auction Co. v. First State Bank,* 531 S.W.2d 167 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.). The circumstances of the purchase permit the inference that the sellers of the interest accepted the check as payment and not as a future obligation to pay. In this respect the case differs from *Broussard v. Tian,* in which payment was by promissory note.

### Koch Receivables

■ On the other hand, we conclude that the evidence concerning the two Koch oil run receivables does not support the jury findings that they are Pat's separate property. The record contains a promissory note signed by both Pat and Robbie, which Pat admits evidences the amount owing for purchase of these receivables. There is no evidence that this note was not a community obligation. *Broussard,* 295 S.W.2d at 406. Consequently the property is community.

■ Pat relies on a division order from Humble showing ownership of these receivables in Pat Holloway's name with no interest in Robbie Holloway. Such a recitation is not sufficient in itself to overcome the

presumption of community. *Lusk v. General Motors Acceptance Corp.*, 395 S.W.2d 847 (Tex.Civ.App.—Tyler 1965, no writ). Nor are the jury's findings supported by Pat's testimony that the receivables represented oil produced from the Giddings ranch, which, he testified, was his separate property. In dividing the assets, the trial court treated the Giddings ranch as community property, and Pat makes no complaint of the judgment in this respect. Such testimony would have no relevancy in view of the evidence already mentioned that the property was purchased from Humble by a promissory note which was presumably a community obligation.

### Division of Community Property

■■■■ Pat Holloway contends that the court erred in disregarding the jury's finding in answer to issue number twelve to the effect that he should be awarded 70 percent of the community property and Robbie should be awarded 30 percent. The decree awards Pat 59.5 percent and Robbie 40.5 percent. Robbie also complains of this division, contending that she is entitled to at least 50 percent. We hold that this finding is advisory; consequently, the court had discretion to disregard it. *Bagby v. Bagby*, 186 S.W.2d 702, 706 (Tex.Civ.App. —Amarillo 1945, no writ); *see Cockerham v. Cockerham*, 527 S.W.2d 162, 173 (Tex. 1975); *Goetz v. Goetz*, 534 S.W.2d 716, 718 (Tex.Civ.App.—Dallas 1976, no writ). For the same reason, the court had discretion to disregard the answers to issue number fifteen, which inquired what percentages the parties should pay of income taxes due for 1981 and prior years. On remand the trial court will have broad discretion to make a division of the community property, as established by the verdict. *Cockerham*, 527 S.W.2d at 173.

### Granting Divorce to Pat Holloway

In her appeal, Robbie Holloway complains that the trial court erred in granting a divorce to Pat Holloway and contends that each of the parties should have been granted a divorce from the other because section 3.01 of the Texas Family Code provides that a divorce may be decreed without regard to fault if the marriage has become insupportable. She argues further that she should have been granted a divorce from Pat because his conduct rendered the marriage insupportable. Pat responds that the case was tried on his allegations of cruelty and that there is evidence supporting jury findings in his favor on that ground.

■■■■ Although the record in this case contains an original transcript of 138 pages and a supplemental transcript of 508 pages, the verdict has been omitted. The charge of the court, as shown in the transcript, does not show the jury's answers. Issues were submitted inquiring whether each of the parties was guilty of cruel treatment to the other of a nature that renders further living together insupportable, but we are not advised concerning the jury's answer to these issues. In this state of the record, we must presume that the verdict supports the decree granting the divorce to Pat Holloway. Moreover, since Robbie's motion to disregard certain jury findings does not include the jury's answers on the cruelty issues, she has no standing to attack the verdict in this respect. Consequently, no error is shown.

■■■■ In this connection Pat complains of the provision in the decree to the effect that regardless of the community or separate character of the stock in Humble Exploration and Sterling Pipeline, equitable division of the properties requires division of this stock in the same ratio as the division of the community property of the parties. To the extent that the decree is intended to divest any of Pat's separate property interest in this stock, it is contrary to the controlling decision of the supreme court in *Cameron v. Cameron*, 641 S.W.2d 210 (Tex.1982). Consequently, this point is sustained.

### The Browning Intervention

■■■■ Both Pat and Robbie complain of the provision of the decree which dismisses without prejudice the intervention of the

Brownings, who have claims against the Holloways in other litigation. Pat and Robbie contend that the Browning intervention should be dismissed with prejudice because the interveners failed to litigate their claims to judgment in this suit. We disagree. The proper order when a party fails to prosecute his claims with reasonable diligence is dismissal without prejudice. *Collins v. Flatte*, 614 S.W.2d 580, 582 (Tex.Civ.App.—Texarkana 1981, no writ); *Tewell v. Tewell*, 599 S.W.2d 351, 354 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.); 4 R. McDonald, *Texas Civil Practice* § 17.18 (rev. 1971).

## Appointment of a Master

Pat Holloway further complains of the appointment of a master and the delegation to the master of judicial duties. The decree authorizes the master to sell the parties' residence and also certain jewelry and furs if Robbie elects not to take these at their inventory values, to conduct an accounting of the Koch oil run receivables and the household furnishings, and to make a division with a "cash adjustment," if necessary, in accordance with the percentages determined by the decree.

■ We agree that the duties imposed on the master go beyond the duties of a master in chancery as authorized by rule 171 of the Texas Rules of Civil Procedure. The duties imposed by the decree are more like those of a receiver under articles 2293–2319 of the Texas Revised Civil Statutes (Vernon 1971), but the master is not instructed to take the oath and give the bond prescribed by article 2296. With respect to sale of the residence, the master is not directed to conform to the general requirements of a judicial sale, namely, an application for approval, notice to the parties, and a hearing at which the parties may raise objections. *See Harrington v. Schuble*, 608 S.W.2d 253, 256–67 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ). With respect to the accounting, the decree does not direct the master to make a report to the court, nor does it provide any opportunity for the parties to make objections.

Under rule 171, the master acts under the orders of the court and his report is only a recommendation which the court may confirm, modify, correct, reject, or recommit. Either party has the right to review of the master's recommendations by the court on proper objection to the master's report. The court is directed to conform to these requirements if it decides to appoint a master or receiver after another trial.

## Judgment on Appeal

■ Because of our holding that the trial court improperly disregarded the findings of the jury concerning the stock in Humble Explorations and Sterling Pipeline and the interest in the D.B. Johnson well, the decree must be reversed insofar as concerns division of the property. We cannot render the judgment that the trial court should have rendered because division of the community property is a matter within the discretion of the trial court. *McKnight v. McKnight*, 543 S.W.2d 863, 866 (Tex. 1976). Exclusion of this separate property may require a different division of the community. Consequently, we must remand the case to the trial court for a new division.

We still must determine, however, whether to instruct the trial court to render judgment on the verdict, except to the extent that we hold the jury's findings to have been properly disregarded, or to retry the issues with respect to the separate or community character of the property. We conclude that we should remand for a new trial in the interest of justice because our decision here rests on the recent decisions of the Supreme Court in *Vallone v. Vallone*, 644 S.W.2d 455 (Tex.1982), and *Jensen v. Jensen*, 665 S.W.2d 107 (Tex.1983), both of which were decided after the present case was tried. On another trial, the case may be tried according to the law declared in those opinions. *Scott v. Liebman*, 404 S.W.2d 288, 294 (Tex.1966); *see Jackson v. Ewton*, 411 S.W.2d 715, 718 (Tex.1967).

### Costs of Appeal

Rule 448 of the Texas Rules of Civil Procedure provides that if the case is reversed on appeal, the appellant shall be entitled to an execution against the appellee for the costs occasioned by the appeal, but further provides that the court may tax the costs otherwise for good cause. In the exercise of our discretion under this rule, we tax the entire costs of the appeal against Pat Holloway. We conclude that good cause exists for doing so because Pat Holloway's counsel has caused to be filed in this court a transcript in four volumes aggregating 646 pages, most of which is irrelevant to this appeal, including abandoned pleadings, temporary orders, motions in limine, numerous notices of intention to take depositions of various witnesses with written interrogatories attached, commissions to take depositions, notices to take oral depositions, docket sheets, jury lists, briefs filed in the trial court, and the like. These papers, all of which were included in the specific request of counsel, are not referred to in the briefs, but they have added hours to our labor in finding and studying the documents relevant to the appeal. In previous cases we have taxed the costs of unnecessary papers against the successful party, but this sanction has evidently been too mild to deter this reprehensible practice. Consequently, in this case, we tax the entire cost of the appeal, including the eight volume statement of facts, against appellant Pat Holloway.

The decree of the district court is reversed with respect to division of the property of the parties and the cause is remanded for a new trial of the property issues. All costs of the appeal are taxed against Pat Holloway. Otherwise, the decree is affirmed.

### On Motion for Rehearing

Pat Holloway has filed a motion for rehearing complaining of our remand for a new trial of the property issues and urging that the new trial be limited to the issue of reimbursement. On this question we now have guidance from the latest opinion of the supreme court in *Jensen v. Jensen*, 665 S.W.2d 107 (Tex.1984). *Jensen* was remanded for trial of the reimbursement issue alone. In the light of that holding, we conclude that the issue of reimbursement is "clearly separable without unfairness to the parties" within the authorization for partial new trials in rule 434 of the Texas Rules of Civil Procedure. Accordingly, we grant the motion for rehearing in part and remand the cause to the trial court with instructions to determine the amount of reimbursement, if any, due to the community under the formula established in *Jensen*. After trial of that issue, whether by a jury or otherwise, the court is instructed to make a proper division of the community property based on that finding, if supported by evidence, and on the verdict previously rendered, except to the extent that we have held that the jury's findings have been properly disregarded. Our judgment is modified accordingly. Otherwise the motion for rehearing is overruled.