# IN THE SUPREME COURT OF TEXAS

════════════

No. 12-0718

════════════

STATE OF TEXAS, PETITIONER,

v.

$1,760.00 IN UNITED STATES CURRENCY, 37 "8" LINER MACHINES, RESPONDENT

═══════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

═══════════════════════════════════════════════════════

**PER CURIAM**

This is a civil forfeiture case involving the seizure of thirty-seven gaming machines, commonly known as "eight-liners," by the State of Texas after the Tarrant County Sheriff's Department obtained and executed a warrant to search the Magic Games Game Room owned by Sammy Dean Barnes. The Texas Penal Code excludes from the definition of "gambling device" certain contrivances that reward players "exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items." TEX. PENAL CODE § 47.01(4)(B). Barnes challenges the seizure, arguing that his eight-liners fell within the statutory exclusion. The State contends that Barnes's eight-liners cannot fall within that exclusion because the eight-liners awarded tickets that could be redeemed for non-immediate rights of replay, which the State argues

is an intangible reward precluding application of the statutory exclusion.  We agree with the State.

Accordingly, we reverse the court of appeals' judgment and reinstate the trial court's judgment.

The Tarrant County Sheriff's Department obtained a search warrant for Magic Games Game Room after an investigation yielded information that the eight-liners were awarding players tickets that they could redeem for future play on another day—referred to as non-immediate rights of replay. Upon execution of the search warrant, the Sheriff's Department seized thirty-seven eight-liners and $1,760 in cash from an automated teller machine (ATM) on the premises.[1]

Following the seizure, the State initiated forfeiture proceedings under article 18.18 of the Texas Code of Criminal Procedure in the justice court, which ultimately ordered forfeiture of the eight-liners. *See* TEX. CODE CRIM. PROC. art. 18.18.  Barnes appealed to the county court at law for a trial de novo.  At trial, Barnes testified that the eight-liners accepted cash, which the machine converted into points that were used for play.  When a player redeemed points from an eight-liner upon completion of play, the eight-liner dispensed a ticket for every five hundred points won. Players could use the tickets to either (1) redeem store merchandise that did not exceed a wholesale value of $5, or (2) receive credits to replay another machine, which were implemented electronically by an attendant from a central location without having to convert the tickets back into cash.  Barnes's establishment allowed players to return at a later date to redeem the tickets for replays on the eight-liners.  It is undisputed that the tickets had no cash value and were never exchanged for cash for replay.

---

[1] Because Barnes does not claim ownership of the cash seized from the ATM, it is not at issue in this appeal.

After a trial de novo, the county court ordered the eight-liners forfeited to the State. The court of appeals reversed, holding that the eight-liners fell within the exclusion to the definition of "gambling device" in section 47.01(4)(B) of the Penal Code because non-immediate rights of replay could be considered "novelties" under the exclusion, which the court of appeals defined as a "new event." 372 S.W.3d 277, 285–86. The State petitioned this Court for review, arguing that the court of appeals erred by construing the term "novelties" to mean a "new event" rather than small, tangible goods similar in form to "noncash merchandise prizes" and "toys," which are the two terms that precede "novelties" in section 47.01(4)(B). *See* TEX. PENAL CODE § 47.01(4)(B). The State avers that, under its proposed construction of "novelties," a reward of a non-immediate right of replay prevents the statutory exclusion from applying to Barnes's eight-liners. We agree.

The issue is one of statutory construction, which we review de novo. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). Our primary objective when interpreting a statute is to give effect to the Legislature's intent. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). Legislative intent is best expressed by the plain meaning of the text unless the plain meaning leads to absurd results or a different meaning is supplied by legislative definition or is apparent from the context. *Tex. Lottery Comm'n*, 325 S.W.3d at 635.

The Penal Code defines "gambling device" as:

any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance.

3

TEX. PENAL CODE § 47.01(4). The Penal Code broadly defines "things of value" as "any benefit" but specifically excludes "an unrecorded and *immediate* right of replay not exchangeable for value." *Id.* § 47.01(9) (emphasis added). The parties do not dispute that the eight-liners fall within the Penal Code's general definition of "gambling device." The eight-liners awarded players tickets that were redeemable for either noncash store merchandise or *non-immediate* rights of replay—both clearly benefits and thus "things of value" under the statute. *See id*. Instead, the dispositive issue in this case requires construction of the exclusion under section 47.01(4)(B), which provides that the term "gambling device" does not include:

> any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.

*Id.* § 47.01(4)(B).

As we noted in *Hardy v. State*, 102 S.W.3d 123 (Tex. 2003), the exclusion in section 47.01(4)(B) applies only if the eight-liners reward players "exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items." *Id.* at 131 (quoting TEX. PENAL CODE § 47.01(4)(B)). The pertinent facts surrounding the nature of the reward are undisputed in this case. The eight-liners issued tickets (i.e., "representations of value") that could be redeemed for either store merchandise or non-immediate rights of replay. The critical inquiry is whether non-immediate rights of replay qualify as "noncash merchandise prizes, toys, or novelties." TEX. PENAL CODE § 47.01(4)(B).

4

In *Hardy*, we held that eight-liners that awarded players tickets that were exchangeable for either gift certificates redeemable at local retailers or cash to play other machines did not fall within the exclusion in section 47.01(4)(B). *Hardy*, 102 S.W.3d at 131–33. We concluded that gift certificates redeemable at local retailers did not qualify as a noncash merchandise prize, toy, or novelty item because the gift certificates operated the same as legal tender. *Id.* at 132. For similar reasons, we held that eight-liners that dispense tickets redeemable for cash, even when the cash can be used only for additional play, do not meet the exclusion. *Id.* We reasoned that an award of cash, regardless of its subsequent use, precludes application of the statutory exclusion because the tickets were no longer redeemable *exclusively* for noncash merchandise prizes, toys, or novelties. *Id.* We left open the possibility, however, that additional play could be accomplished by some other method that did not violate section 47.01(4). *Id.*

In this case, we recognize that awards of additional play were accomplished electronically rather than through a cash conversion like in *Hardy*. Nevertheless, we apply the same analysis under section 47.01(4)(B): Is a non-immediate right of replay a noncash merchandise prize, toy, or novelty item? While "novelty" can be defined as a "new event," as the court of appeals noted, 372 S.W.3d at 285, we conclude that the context of section 47.01(4) indicates that the Legislature intended a meaning of novelty consistent with the other terms of the statute. Thus, while the method of awarding additional play in this case differs from that in *Hardy*, the result remains the same.

The Penal Code does not define "novelties." Undefined terms in a statute are typically given their ordinary meaning. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). However, we will not give an undefined term a meaning that is out of harmony or inconsistent with

5

other terms in the statute. *In re Hall*, 286 S.W.3d 925, 929 (Tex. 2009); *see also Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 750–51 n.29 (Tex. 2006) (applying the traditional canon of construction *noscitur a sociis*—or "it is known by its associates"—to construe the last term within a series). "[I]f a different, more limited, or precise definition is apparent from the term's use in the context of the statute, we apply that meaning." *Hall*, 286 S.W.3d at 929. Therefore, when an undefined term has multiple common meanings, the definition most consistent within the context of the statute's scheme applies. *See id.* (applying the dictionary's second definition of "detention" as the term is used in the Juvenile Justice Code); *see also Combs*, 340 S.W.3d at 441 ("It is a fundamental principle of statutory construction and indeed of language itself that words' meanings cannot be determined in isolation but must be drawn from the context in which they are used.").

In addition to the definition of "novelty" as a "new event," many dictionaries define "novelty" as a small manufactured article, object, or toy. *See, e.g.*, AMERICAN HERITAGE COLLEGE DICTIONARY 934 (3d. ed. 2000) (defining "novelty" as "a small mass-produced article, such as a toy or trinket."). For instance, the third definition in Webster's Third New International Dictionary—the same dictionary the court of appeals relied on—defines "novelty" as "a small manufactured article intended mainly for decoration or adornment and marked by an unusual or novel design." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1546 (2002). The context of section 47.01(4) indicates that the Legislature intended "novelty" to mean other types of tangible articles similar to "noncash merchandise prizes" and "toys"—not a "new event" as the court of appeals defined the term. Under this definition, we hold that non-immediate rights of replay are not novelties.

6

Therefore, we hold that Barnes's eight-liners do not fall within the exclusion in section 47.01(4)(B) because the distributed tickets were not redeemable *exclusively* for noncash merchandise prizes, toys, or novelties. *See* TEX. PENAL CODE § 47.01(4)(B). The court of appeals erred when it held otherwise. Accordingly, we grant the State's petition for review, and without hearing oral argument, we reverse the judgment of the court of appeals and reinstate the judgment of the county court at law. *See* TEX. R. APP. P. 59.1.

OPINION DELIVERED: June 28, 2013