# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00649-CV

---

**Prabhakar Gopalan, Appellant**

**v.**

**Andrea Marsh, Appellee**

---

### FROM THE 200TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-18-007340, THE HONORABLE JESSICA MANGRUM, JUDGE PRESIDING

---

## C O N C U R R I N G   A N D   D I S S E N T I N G   O P I N I O N

I concur in part and dissent in part because I believe when a parent is named the conservator with the right to designate the children's primary residence, that right necessarily means the children should live at that residence at least half, if not slightly more than half, of the time. Instead of affirming the trial court's decision on the possession terms, for the reasons explained below, I would hold that the trial court's judgment on this issue impermissibly conflicts with the jury's verdict determining that Gopalan has the exclusive right to designate the primary residence of the children within Travis County. Therefore, I would reverse the trial court's judgment on this issue and remand for the trial court to redetermine the possession schedule. Although I concur in the Court's reasoning that the trial court may determine the division of parental rights and duties between the joint managing conservators, I would remand to allow the trial court the opportunity to reconsider the division of parental rights and duties and child support so that it could consider the factor of where the children would be spending the majority of their

time. I would also reverse and remand for reconsideration of the separate-property issue and the attorneys' fees award.

**The possession schedule violates the Texas Constitution and the Family Code.**

I would conclude that the trial court's judgment awarding Gopalan less possession time than the presumed minimum for a possessory conservator contravenes the jury's verdict awarding him the exclusive right to designate the primary residence of the children and thus violates the Texas Constitution and the Family Code. *See* Tex. Const., art. I, § 15 ("The right of trial by jury shall remain inviolate."); Tex. Fam. Code § 105.002(c)(1)(D) (establishing right to jury verdict and forbidding trial court from contravening jury verdict on issue of which joint managing conservator has exclusive right to designate children's primary residence). The Court concludes that the trial court's judgment "implements the letter of the jury's verdict," (slip op. at 15), and that the trial court's award of less time than the presumed statutory minimum for a possessory conservator does not contravene that verdict because the Texas Legislature has not defined "primary residence" or "provided a minimum amount of possession that courts must award the parent given the right to establish the child's primary residence," (slip op. at 15-16). I disagree with the Court's construction of the Family Code.

When we construe statutes, "our primary objective is to give effect to the Legislature's intent." *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). "We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results." *Id.* "Undefined terms in a statute are typically given their ordinary meaning, but if a different or more precise definition is apparent from the term's use in

2

the context of the statute, we apply that meaning." *TGS–NOPEC Geophysical Co. v. Combs,* 340 S.W.3d 432, 439 (Tex. 2011). However, courts will not give an undefined term a meaning that is out of harmony or inconsistent with other terms in the statute. *State v. $1,760.00 in U.S. Currency,* 406 S.W.3d 177, 180 (Tex. 2013). If "an undefined term has multiple common meanings, the definition most consistent within the context of the statute's scheme applies." *Id.* at 180-81.

The Court takes issue with Gopalan's description of the jury's finding as a determination that he should be the "primary conservator," concluding that "the Family Code does not empower the jury to find—and the jury in this case did not find—that one parent is the 'primary conservator,' 'primary parent,' or 'primary care-giver' or that one parent shall have 'primary custody.'" (Slip op. at 12.) While I concur with the Court's conclusion that the Family Code does not require that the person given the exclusive right to designate the primary residence must also be given "a superior or primary right to make a host of other decisions as a joint managing conservator," (slip op. at 12), I disagree with the Court's conclusion that the jury's verdict does not carry with it implications for the amount of possession time that the person given the right to designate the primary residence is entitled to.

In my view, the word "primary" before "residence" must mean something. The ordinary meaning of the word "primary" is "of first rank, importance, or value**: PRINCIPAL**." *Primary,* https://www.merriam-webster.com/dictionary/primary (last visited January 15, 2025); *see also Principal,* https://www.merriam-webster.com/dictionary/principal (last visited January 15, 2025) (defined as "most important, consequential, or influential**: CHIEF**"). By definition, then, the primary residence is the principal residence—the residence of first rank or the

3

most important residence.  For a residence to be the children's most important residence, at a minimum, the children should live there at least half, if not slightly more than half, of the time.[1]

The Court concludes that the Legislature's decision to allow a jury to decide which parent has the right to determine a child's primary residence does not "automatically bestow a minimum amount of possession along with the right to choose the child's primary residence." (Slip op. at 15.)  I disagree.  When engaging in statutory construction, we are required to view the statutory language in context and harmonize terms.  *See $1,760.00 in U.S. Currency*, 406 S.W.3d at 180.  In context, the statutory language in Chapter 153, and in particular, the language of Subchapter F, which establishes the terms of standard possession orders and to whom they apply, expressly reflects the Legislature's intent to apply those standard-possession-order terms to the joint managing conservator *without the right to designate the primary residence*.  Tex. Fam. Code §§ 153.3101-.3171.

When a court orders parents appointed as joint managing conservators, it must

(1) designate the conservator who has the exclusive right to determine the primary residence of the child and:

(A) establish, until modified by further order, a geographic area within which the conservator shall maintain the child's primary residence; or

---

[1] This definition is consistent with how the IRS would determine who is the parent who may claim a child as their dependent.  IRS regulations provide that "[c]ustodial parents generally claim the qualifying child as a dependent on their return," and "[t]he custodial parent is the parent with whom the child lived for the greater number of nights during the year."  The other parent is the noncustodial parent.  *See* https://www.irs.gov/newsroom/claiming-a-child-as-a-dependent-when-parents-are-divorced-separated-or-live-apart (last visited January 15, 2025).  The concept of "primary residence" is also necessary to (1) allow one parent "to determine residency for purposes of public school enrollment if the parents reside in different districts" and (2) allow for the parent who is awarded the right the power to relocate without court approval (at least within a designated geographical area).  *See Doncer v. Dickerson*, 81 S.W.3d 349, 361 (Tex. App.—El Paso 2002, no pet.).  The analysis in *Doncer* is consistent with the idea that the parent who has the right to determine primary residence is the parent with primary custody.  *See id.* at 359.

4

> (B) specify that the conservator may determine the child's primary residence
> without regard to geographic location[.]

*Id.* § 153.134(b). Subchapter F of Chapter 153, *see id.* §§ 153.3101-.3171, governs standard possession orders for both possessory and joint managing conservators and creates two types of standard possession orders; which standard possession order applies depends on how far the conservator resides from the child's primary residence. Section 153.312 delineates standard-possession terms for a conservator who "resides 100 miles or less *from the primary residence of the child*," *id.* § 153.312 (emphasis added), while Section 153.313 outlines the standard-possession terms for a conservator who "resides more than 100 miles from the residence of the child," *id.* § 153.313, and Section 153.3171 establishes beginning and ending possession times if "conservator resides not more than 50 miles from the primary residence of the child," *see id.* § 153.3171. If these provisions applied to the conservator with the right to designate the child's primary residence, there would be no need for the language denoting how far the conservator lives from the child's primary residence—that language would be superfluous. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003) (construing statute to give effect "to every sentence, clause, and word of a statute so that no part thereof be rendered superfluous or inoperative" (quoting *Spence v. Fenchler*, 180 S.W. 597, 601 (1915)). Accordingly, the corollary to the statutory presumption that the standard possession order applies to the joint managing conservator without the right to designate the child's primary residence is that the conservator with the right to designate the primary residence is presumed entitled to possession at all other times. Thus, viewed in context, the Legislature has made the joint managing conservator with the right to designate the primary residence the person with default possession because in a situation where

5

there are two joint managing conservators, the rebuttable presumption that the standard possession order provides reasonable minimum possession applies to the joint managing conservator without that right.[2] *See* Tex. Fam. Code § 153.252 (establishing rebuttable presumption that standard possession order "provides reasonable minimum possession of a child for a parent named as a possessory conservator or joint managing conservator").

Construing the statute in this manner avoids an interpretation that could lead to absurd results. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008) (explaining that courts avoid statutory constructions that lead to absurd results). Under the Court's analysis, a trial court could theoretically limit the possession of a parent to whom a jury has awarded the right to designate primary residence to one day per month of supervised possession. If the parent with the right to determine the primary residence does not get to choose where the child lives at least half of the time, then what right have they been given? The right to choose where the parent who has possession for most of the time lives? That would be an absurd result.

This statutory analysis can be harmonized with both the statutory provision providing that the trial court does not have to award the joint managing conservators equal time, *see* Tex. Fam. Code § 153.135, and the provision precluding the court from submitting to the jury

---

[2] The Legislature's repeal of Section 153.137 in 2009 does not persuade me that my interpretation of the statutory provisions is incorrect. *See* former Tex. Fam. Code § 153.137 (Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 150-51, *amended by* Act of May 27, 2003, 78th Leg., ch. 1036, § 12, 2003 Tex. Gen. Laws 2987, 2991, *repealed by* Act of May 27, 2009, 81st Leg., ch. 1113, § 31, 2009 Tex. Gen. Laws 3056, 3072). Although that provision had expressly provided that "[t]he standard possession order constitutes a presumptive minimum amount of time for possession of a child by a parent named as a joint managing conservator who is *not* awarded the exclusive right to designate the primary residence of the child in a suit," in my view, the Legislature correctly repealed it—it was a superfluous provision given the terminology used in the existing provisions in Subchapter F to differentiate between orders based on the conservator's distance from the child's primary residence and the existing rebuttable presumption established in Section 153.252.

the issue of a specific term or condition of possession of or access to the child, *see id.* § 105.002(c)(2)(B). As for the first provision, holding that the parent with the right to designate the primary residence starts from a baseline of at least half time does not violate Section 153.135. By its plain language, Section 153.135 merely states that "[j]oint managing conservatorship does not require the award of equal or nearly equal periods of physical possession of and access to the child to each of the joint conservators." *Id.* § 153.135. It does not speak at all to how much possession the person with the right to designate the primary residence is entitled to.

As for the second provision, this statutory construction does not impinge on the trial court's ability to impose specific terms and conditions of possession and access. While the trial court may not contravene the jury's award of the right to designate the primary residence by setting up a schedule that effectively creates two primary residences or awards the primary-residence conservator less than half time, the trial court is still empowered within those confines to create a possession-and-access schedule supported by the evidence and may award the conservator without the primary-residence right more time than the standard possession order provides. *Compare, e.g.*, *In re S.H.*, 590 S.W.3d 588, 593 (Tex. App.—El Paso 2019, pet. denied) (holding that "2-2-5-5" schedule and summer schedule provided in standard possession order did not "impede [mother's] ability to determine the children's primary residence because they do not effectively require the children to periodically change their residence"), *and In re W.B.B.*, No. 05-17-00384-CV, 2018 WL 3434588, at *3 (Tex. App.—Dallas July 17, 2018, no pet.) (mem. op.) (holding that week-on-week-off possession schedule that gave parents roughly equal possession time did not contravene jury's verdict awarding father right to designate child's primary residence), *with Albrecht v. Albrecht*, 974 S.W.2d 262, 265 (Tex. App.—San Antonio 1998, no pet.) (holding that trial court abused its discretion and contravened jury verdict awarding father

7

"exclusive right to establish the primary physical residence of the child" by setting possession schedule that gave father possession from June 1 to December 1 and mother possession from December 1 to June 1 because "the conditions permit [mother] to establish the primary residence of the child for every other six-month time period"), *and In re Z.K.S.*, No. 13-19-00011-CV, 2020 WL 103864, at *7 (Tex. App.—Corpus Christi–Edinburg Jan. 9, 2020, no pet.) (mem. op.) (holding week-on-week-off possession order contravened jury's finding that mother should have right to designate primary residence within State of Texas of child who was less than three years of age because 240-mile distance between parents' residences meant child would effectively have two primary residences and parents would be unable to maintain stable child care).

As noted above, the Court concludes that the trial court's decree "implements the letter of the jury's verdict," noting that the court had not asked the jury to appoint the parent with "primary care" responsibilities. (Slip op. at 15.) However, the parties argued to the jury about who should be able to determine the primary residence and what the geographic restriction should be, with Marsh arguing that she should be given the primary-residence right with a geographic restriction to Austin Independent School District so that the children could remain in their current schools, while Gopalan argued that he should be given the primary-residence right with a geographic restriction to Travis County because he wanted the option to move to a different school district in Travis County because there might be better educational options for the children in that district. The jury rejected Marsh's request.

Based on my construction of the statute, I would conclude that to give meaning to the jury verdict, the joint managing conservator with the right to designate primary residence must be given at least half time with the children. Here, the trial court awarded Gopalan far less than half time by awarding him less than the statutory presumed minimum time under the standard

8

possession order. Accordingly, I would hold that the trial court impermissibly contravened the jury's verdict by awarding Gopalan less than half possession time.

**Because the trial court's possession schedule should be reversed and remanded for reconsideration, Gopalan's other issues related to the apportionment of parental rights and duties should also be reconsidered.**

In general, I concur with the Court's conclusion that a trial court does not abuse its discretion "simply by exercising its legislatively created discretion to accord the exclusive right to make medical, schooling, and passport decisions to a different parent than the jury accorded the right to establish the child's primary residence." (Slip op. at 21-22); *see also* Tex. Fam. Code § 105.002(c)(2) (establishing that court, not jury, decides issues of rights and duties of conservators except for determination of who has exclusive right to designate child's primary residence and any geographic-area restriction). However, I also think that the disposition of some of those rights might flow from where the children are spending most of their time. Thus, because I would remand this case for the trial court to reconsider the possession schedule, I would also allow the court to reconsider its decisions on these issues to the extent a change in the possession schedule would change its views on any of these issues or the issue of child support.

**Because Gopalan produced more than a scintilla of evidence that he had a separate-property interest in the Milton Residence, I would also sustain Gopalan's separate-property issues.**

I also disagree with the Court's conclusions on Gopalan's Issues 5 and 6, which are related to his asserted separate-property interest in the Milton Residence. In Issue 5, Gopalan argues that the trial court abused its discretion by granting a judgment notwithstanding the jury's verdict that he had a separate-property interest in the Milton Residence and committed reversible error by divesting him of that interest; in Issue 6, he asserts that the mischaracterization of his

9

separate property and its award to Marsh requires remand of the entire property-division portion of the decree. Although the Court states that it is applying the no-evidence standard of review to the trial court's grant of the judgment notwithstanding the verdict, (slip op. at 38-39), I do not believe it is properly applying the no-evidence standard. The Court concludes that Gopalan's testimony did not sufficiently trace the money he withdrew from his separate-property 401(k) account two weeks before the purchase of the house to the down payment, that he did not provide documentary evidence to support tracing the funds to the down payment, and that he did not testify or document that his separate-property funds were not commingled with community funds in a bank account before being used to make the down payment (slip op. at 43), but it is "limited to reviewing only the evidence tending to support the jury's verdict and must disregard all evidence to the contrary." *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015) (quoting *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex. 1990)). I would conclude that both Gopalan's uncontroverted testimony that he withdrew money from his premarital 401k to pay his portion of the down payment and his 2010 tax return for the year of purchase reflecting the home-buying exemption that he claimed for the 401(k) disbursement add up to more than a scintilla of evidence supporting the jury's verdict. *See Holloway v. Holloway*, 671 S.W.2d 51, 56 (Tex. App.—Dallas 1983, writ dism'd) (concluding that testimony could be sufficient "to identify the source of the funds on deposit and to exclude any commingling with community funds"); *see also Komet v. Graves*, 40 S.W.3d 596, 603 (Tex. App.—San Antonio 2001, no pet.) (citing *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex. 1989)) ("If there is more than a scintilla of evidence to support the jury's finding, then the judgment notwithstanding the verdict should be reversed."). Because I would conclude the trial court committed reversible error on the issue of Gopalan's separate-property interest in the Milton Residence, I would sustain Gopalan's Issues 5

10

and 6 and remand the property division to the trial court for a new just-and-right division of community property. *See Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985) ("Once reversible error affecting the 'just and right' division of the community estate is found, the court of appeals must remand the entire community estate for a new division.").

**Remanding for reconsideration of some issues also would require reconsideration of the attorneys' fees award.**

Because I would remand for reconsideration of some of Gopalan's issues, I would also remand for reconsideration of the attorneys' fees award. *See Lenz v. Lenz*, 79 S.W.3d 10, 21 (Tex. 2002) (remanding attorneys' fees award for trial court to reconsider in light of appellate court's decision reversing portions of judgment).

## CONCLUSION

I would reverse the trial court's order because the possession schedule improperly contravenes the jury's verdict awarding Gopalan the exclusive right to designate the children's primary residence. I would remand the case to allow the trial court to reconsider the possession schedule and to reconsider the division of parental rights and duties (including the bond requirement for international travel) and child support so that it could consider the factor of where the children would be spending the majority of their time. I would also reverse and remand for reconsideration of the separate-property issue and the attorneys' fees award. Accordingly, I concur in part and dissent in part.

_____

Gisela D. Triana, Justice

11

Before Chief Justice Byrne, Justices Triana and Theofanis

Filed:   January 23, 2025