**Affirmed and Opinion filed December 22, 2020.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00731-CV

**THE REPUBLIC TAVERN AND MUSIC HALL, LLC D/B/A LAURENZO'S BAR AND GRILL; ADVANCED DIAGNOSTICS MANAGEMENT, LLP; COGNIZANT MANAGEMENT SOLUTIONS, LLC; LANDMARK HOUSTON HOSPITALITY GROUP, LLC; MIDTOWN SCOUTS SQUARE, LLC; MIDTOWN SCOUTS SQUARE PROPERTY, LP; ZOO CAPITAL HOLDINGS, LLC; ATUL "LUCKY" CHOPRA; NEERAJ "NEIL VERMA; AND JOSEPH B. LENAHAN, Appellants**

**V.**

**LAURENZO'S MIDTOWN MANAGEMENT, LLC, Appellee**

**On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 2018-69411**

# O P I N I O N

In this interlocutory appeal, the appellants challenge the trial court's denial of their motion under the Texas Citizens Participation Act ("the TCPA")[1] for dismissal of the claims against them. Because we conclude that the TCPA does not apply to the claims at issue, we affirm the trial court's ruling.

## I. BACKGROUND

The Republic Tavern & Music Hall, LLC ("Republic") operated a restaurant in downtown Houston. The Laurenzo family has successfully operated restaurants for decades, and Republic contracted with Roland Laurenzo's company, Laurenzo's Midtown Management, LLC ("Midtown"), to convert and manage the restaurant as "Laurenzo's Bar & Grill."

The enterprise failed, and Republic sued Midtown for breach of fiduciary duty and breach of contract. Republic included in the suit seventeen other individuals and entities associated in some way with the Laurenzo family's restaurants,[2] alleging conspiracy, knowing participation in a breach of fiduciary duty, fraud, fraudulent inducement, theft, conversion, constructive trust, unjust enrichment, quantum meruit, assumpsit, money had and received, promissory estoppel, fraudulent transfer, and vicarious liability under veil-piercing and joint-enterprise theories.

Midtown asserted counterclaims against Republic and against nine third-party defendants associated with Republic or with Republic's owner, Dr. Atul "Lucky"

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001–.011. The TCPA was amended in 2019, but this case is governed by the version of the TCPA immediately preceding those amendments. *See* Citizens Participation Act, 82d Leg., R.S., ch. 341, § 2, 2011 TEX. GEN. LAWS 961, 961 (amended 2013 & 2019); Act of May 24, 2013, 83d Leg., R.S., ch. 1042, § 2, 2013 TEX. GEN. LAWS 2499, 2499 (amended 2019).

[2] Midtown's co-defendants are Roland Laurenzo, Domenic Laurenzo, Leo Kelleher, Domco, Inc. d/b/a Mark's BBQ & Catering, ETKF, Inc., El Tiempo Vintage Park, LLC, El Tiempo Elmdale, LLC, El Tiempo Woodlake, LLC, El Tiempo IP, LLC, El Tiempo Washington, LLC, El Tiempo 1308 Annex, LLC, El Tiempo Richmond, LLC, El Tiempo 290, LLC, ETC Stafford, LLC, El Tiempo Cantina Catering, LLC, El Tiempo Franchise Group, LLC, and 4412 Washington, LLC.

Chopra, alleging breach of contract, fraud, conspiracy to defraud, unjust enrichment, quantum meruit, and alter ego. We refer to the third-party defendants collectively as "the Chopra Parties."[3]

Pursuant to the TCPA, Republic and the Chopra Parties moved to dismiss Midtown's claims against them. The trial court denied the motion.

In five issues, Republic and the Chopra Parties argue that (a) the TCPA applies to Midtown's claims; (2) Midtown failed to establish that the TCPA's commercial-speech exemption applies; (3) Republic and the Chopra Parties established affirmative defenses to some of Midtown's claims; (4) Midtown failed to establish a prima facie case for each element of its claims; and (5) Republic is entitled to recover attorney's fees, costs, other expenses, and sanctions against Midtown.

## II. Governing Law

The TCPA was enacted "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."[4] It does so by authorizing a party to file a motion to dismiss a legal action that "is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association."[5] A "legal action" is defined as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial

---

[3] The third-party defendants are Chopra, Neeraj "Neil" Verma, Joseph B. Lenahan, Advanced Diagnostics Management, LLP, Cognizant Management Solutions, LLC, Landmark Houston Hospitality Group, LLC, Midtown Scouts Square, LLC, Midtown Scouts Square Property, LP, and Zoo Capital Holdings, LLC.

[4] TEX. CIV. PRAC. & REM. CODE ANN. § 27.002.

[5] Former TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a).

pleading or filing that requests legal, declaratory, or equitable relief."[6] Thus, "dismissal under the TCPA is determined not by the action as a whole but on a claim-by-claim basis." *Landry's, Inc. v. Animal Legal Def. Fund*, 566 S.W.3d 41, 72 n.19 (Tex. App.—Houston [14th Dist.] 2018, pet. granted).

The movant bears the initial burden to demonstrate by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the movant's exercise of the right of free speech, the right to petition, or the right of association.[7] If the movant satisfies this initial burden, then the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim in question.[8] If the nonmovant does so, then the burden shifts back to the movant to establish by a preponderance of the evidence each essential element of a valid defense.[9] Whether the parties have met these respective burdens is a question of law, which we review de novo. *See Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019).

We similarly apply the de novo standard of review to matters of statutory construction. *See Bush v. Lone Oak Club, LLC*, 601 S.W.3d 639, 647 (Tex. 2020). "[W]e construe [a] statute's words according to their plain and common meaning, unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018) (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)) (citations omitted; alterations in original).

---

[6] Former TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6).

[7] *Id.* § 27.005(b).

[8] TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c).

[9] Former TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d).

## III. ANALYSIS

In their first issue, Republic and the Chopra Parties argue that they met their initial burden to establish by a preponderance of the evidence that Midtown's claims against them are encompassed by the TCPA because the claims are based on, related to, or in response to their exercise of the right of free speech, the right to petition, or the right of association. We address each of these contentions in turn.

### A.     Exercise of the Right of Free Speech

Republic and the Chopra Parties moved to dismiss Midtown's fraud and conspiracy-to-defraud claims on the ground that those claims "are based on, related to, and in response to [Republic's and the Chopra Parties'] alleged statements that they 'would and could fund' Midtown's renovation and operation of the restaurant."[10] According to Republic and the Chopra Parties, the TCPA applies to these claims because they are "based on, relate[d] to, or . . . in response to [their] exercise of the right of free speech."[11] Republic and the Chopra Parties further represent that "Midtown admits that the TCPA applies" and that "Midtown admitted its claims are based on, related to, and in response to alleged statements by [Republic and the Chopra Parties] that are in connection with issues related to Midtown's goods, products, and services in the marketplace." We disagree both with Republic's and the Chopra Parties' conclusions and with their characterization of the record.

The statement at issue does not fall within the TCPA's definition of the "exercise of the right of free speech." The TCPA defines the "exercise of the right

---

[10] In its fraud claim, Midtown alleged that Republic and the Chopra Parties alleged that they—Republic and the Chopra Parties—would and could fund the restaurant; however, in its claim for conspiracy to defraud, Midtown alleged that Republic and the Chopra Parties represented only that Republic would and could fund the restaurant.

[11] *See* former TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a).

of free speech" as "a communication made in connection with a matter of public concern."[12] "'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic."[13] In the version of the TCPA applicable here, a "matter of public concern" was defined to include "a good, product, or service in the marketplace."[14] As explained in *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 134 (Tex. 2019), "The 'in the marketplace' modifier suggests that the communication about goods or services must have some relevance to a wider audience of potential buyers or sellers in the marketplace, as opposed to communications of relevance only to the parties to a particular transaction." Because they are not relevant to a wider audience of potential buyers or sellers, such "communications, with a limited business audience concerning a private contract dispute, do not relate to a matter of public concern under the TCPA." *Id.* at 136. "A private contract dispute affecting only the fortunes of the private parties involved is simply not a 'matter of public concern' under any tenable understanding of those words." *Id.* at 137.

The alleged representations about the restaurant's funding was made to a limited business audience concerning the private contract dispute between Republic and Midtown. Because the statement is not relevant to a wider audience of potential buyers or sellers of Midtown's services, the statement was not made "in connection with a matter of public concern."

---

[12] TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3)

[13] *Id.* § 27.001(1).

[14] Former TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7)(E) (repealed 2019).

Nor has Midtown made a contrary admission. Republic and the Chopra Parties have merely inferred such admissions from the statement in Roland Laurenzo's business-record affidavit, "[Midtown] is primarily engaged in the business of selling or leasing goods or services. The statements and/or conduct forming the basis of the parties' claims and counterclaims in this lawsuit arises [sic] out of the sale or lease of goods and services by [Midtown]." Midtown has consistently maintained that the statements concern "an isolated business dispute which does not affect the general public or the marketplace at large." We agree.

We overrule the free-speech portion of Republic and the Chopra Parties' first issue.

## B.    Exercise of the Right to Petition

Republic and the Chopra Parties also moved to dismiss all of Midtown's claims against them on the ground that Midtown's claims were asserted against them in response to Republic's claims, and thus, Midtown's claims were raised in response to their exercise of the right to petition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(4)(A)(i) ("'Exercise of the right to petition' means . . . a communication in or pertaining to . . . a judicial proceeding . . . ."). Republic had sued Midtown and seventeen other defendants connected in some way to Midtown or to Midtown's owner Roland Laurenzo, and according to Republic and the Chopra Parties, Midtown filed a "revenge pleading" against them because Midtown or its counsel was "enraged" that Republic refused to dismiss the claims against Midtown's co-defendants. We conclude that this argument is without merit.

First, this complaint can be raised only by the party who exercised the right to petition. *See* former TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a) ("If a legal action is based on, relates to, or is in response to *a party's* exercise of the . . . right

7

to petition . . . , *that party* may file a motion to dismiss the legal action." (emphasis added)); *Lang v. Knowles*, No. 01-18-00268-CV, 2019 WL 4065015, at *6 (Tex. App.—Houston [1st Dist.] Aug. 29, 2019, pet. denied) (mem. op.). Republic and the Chopra Parties take the position that Midtown sued them only because Republic refused to dismiss claims against Midtown's seventeen co-defendants, but the claims against Midtown and its co-defendants were asserted only by Republic, not by any of the Chopra Parties. Given their position that Midtown's claims are in response only to Republic's exercise of the right to petition, only Republic is authorized to seek dismissal of the claims against it on this basis.

Second, we must disregard Republic's assertion about the feelings of Midtown or its counsel. No evidence supports Republic's characterization, which is contrary not only to the standard of review, which requires us to consider the pleadings and evidence in the light favorable to the nonmovant, but also to the mandatory presumption that pleadings are filed in good faith. *See, e.g., Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 84 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (in reviewing the ruling on a motion to dismiss under the TCPA, the appellate court considers the pleadings and the evidence in the light favorable to the nonmovant); TEX. R. CIV. P. 13 ("Courts shall presume that pleadings, motions, and other papers are filed in good faith"); *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 731 (Tex. 1993) ("Rule 13 prescribes that courts presume that papers are filed in good faith.").

Thus pared down, Republic's argument rests entirely on the assumption that Midtown asserted claims against Republic because Republic asserted, and persisted in pursuing, claims against Midtown.[15] But Midtown's factual allegations are solely

---

[15] Under this reasoning, all claims asserted by a defendant, either as a counterclaimant or as a third-party plaintiff, would be claims "in response to . . . a communication in or pertaining to . . . a judicial proceeding," because by definition, such claims can be brought only by a party

concerned with private communications outside of, and unrelated to, any judicial or governmental proceeding. *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (noting that the basis of a legal action is determined by the pleader's allegations). Such claims do not implicate the right to petition. *See Bumjin Park v. Suk Baldwin Props., LLC*, No. 03-18-00025-CV, 2018 WL 4905717, at *3 (Tex. App.—Austin Oct. 10, 2018, no pet.) (mem. op.) (counterclaims were not based on, related to, or in response to the exercise of the right to petition where the counterclaims relied only on allegations of fact outside the context of the lawsuit). We decline to hold that the TCPA's applicability turns solely on which party won the race to the courthouse. *See, e.g.*, *Marrujo v. Wisenbaker Builder Servs., Inc.*, No. 01-19-00056-CV, 2020 WL 7062318, at *9 (Tex. App.—Houston [1st Dist.] Dec. 3, 2020, no pet. h.) (mem. op.) (right to petition not implicated by the mere fact that the claims were brought after the defendant was sued).

In sum, Midtown's claims as a counterclaimant and third-party plaintiff do not rely upon, or even mention, any communication by any party "in or pertaining to . . . a judicial proceeding." Because Midtown's claims are independent of any such communication, we overrule the right-to-petition portion of Republic and the Chopra Parties' first issue.

## C. Exercise of the Right of Association

Lastly, Republic and the Chopra Parties argue that they established by a preponderance of the evidence that Midtown's claims against them are "based on, related to, and in response to" their exercise of the right of association, defined in

---

who has already been sued. *See, e.g.*, TEX. R. CIV. P. 51(a), 80, 81; *see also Counterclaim*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "counterclaim" as "[a] claim for relief asserted against an opposing party after an original claim has been made"); *Third-Party Plaintiff*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining third-party plaintiff as "[a] defendant who files a pleading in an effort to bring a third party into the lawsuit.").

the applicable version of the TCPA to mean "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests."[16]

The word "common" is not defined in the TCPA, so we "apply the term's common, ordinary meaning, derived first from applicable dictionary definitions, unless a contrary meaning is apparent from the statute's language." *City of Fort Worth v. Rylie*, 602 S.W.3d 459, 467 n.19 (Tex. 2020). "[I]f an undefined term has multiple meanings, we recognize and apply only the meanings that are consistent with the statutory scheme as a whole." *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015). "[W]hen an undefined term has multiple common meanings, the definition most consistent within the context of the statute's scheme applies." *State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 180–81 (Tex. 2013) (per curiam).

In *Kawcak v. Antero Resources Corporation*, 585 S.W.3d 566 (Tex. App.— Fort Worth 2019, pet. denied), the Second Court of Appeals extensively analyzed various dictionaries' definitions of the word, "common." Our sister court emphasized that the primary definition of "common" is "of or relating to a community at large <as a family unit, social group, tribe, political organization, or alliance>: generally shared or participated in by individuals of a community: not limited to one person or special group." *Id.* at 576 (quoting *Webster's Third New Int'l Dictionary* 458 (2002)). The secondary definition of "common" in *Webster's* is "marked by or resulting from joint action of two or more parties: practiced or engaged in by two or more equally." *Id.* The *Kawcak* court pointed out that the *Cambridge*, *MacMillan*, and *Oxford* dictionaries share this same ordering of definitions. *Id.* at 576 n.3.

---

[16] Former TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(2).

10

Although the second definition would apply to any interests common to at least two people, the *Kawcak* court noted that "common interests" as used in the TCPA refers to the collective expression of "common interests," not "'*their*' common interests, which would point to common interests held only by the individuals themselves." *Id.* at 580 (emphasis added). Moreover, the TCPA's purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. Applying the primary definition of "common" would serve the TCPA's purpose, whereas defining "common" to refer to *any* interests shared by at least two people would not encourage or safeguard the right to associate freely and would undermine the statute's purpose of protecting the right to file meritorious lawsuits. For example, every contract is a communication between at least two parties for their common purpose of engaging in the transaction that the contract describes; thus, under the secondary definition of "common," every legal action for the enforcement or breach of a contract would implicate the right of association. Were "common interests" to be construed this broadly, then any contract claim could be made the subject of a motion to dismiss, and the claimant could be required to establish a prima facie case for each element of its claim in an abbreviated time frame, with little or no discovery. *See id.* at 569.

In keeping with the TCPA's purpose, the *Kawcak* court concluded that the exercise of the right of association was not implicated by claims that Kawcak and another individual conspired in tortious conduct such as breach of fiduciary duty. *See id.* at 571, 588. We have previously found *Kawcak* persuasive, and we relied on it in concluding that claims that defendants conspired to commit theft or conversion

11

do not implicate the defendants' exercise of the right of association. *See Bandin v. Free & Sovereign State of Veracruz de Ignacio de la Llave*, 590 S.W.3d 647, 653–54 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).[17] The First Court of Appeals, with whom we share concurrent jurisdiction, has likewise concluded that, as used in the version of the TCPA at issue here, "the proper definition of 'common' in the phrase 'common interests' is 'of or relating to a community at large: public." *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 476 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd w.o.m.) (op. on reh'g en banc). The Fifth and the Eighth Courts of Appeals have similarly construed "common interests." *See Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 426 (Tex. App.—Dallas 2019, pet. denied) (communication "must involve public or citizen's participation" to constitute an exercise of the right of association (quoting *ExxonMobil Pipeline Co. v. Coleman*, 464 S.W.3d 841, 848 (Tex. App.—Dallas 2015), *rev'd on other grounds*, 512 S.W.3d 895 (Tex. 2017) (per curiam))); *Clinical Pathology Labs., Inc. v. Polo*, No.

---

[17] In *Reeves v. Harbor America Central, Inc.*, No. 14-18-00594-CV, __S.W.3d__, 2020 WL 2026527 (Tex. App.—Houston [14th Dist.] Apr. 25, 2020, pet. filed), a majority of a panel of this Court held, without discussing the meaning of the word "common," that the TCPA applied to claims for "breach of an employment agreement containing non-compete, non-solicitation, and confidentiality provisions, misappropriation of trade secrets, conversion, and breach of fiduciary duty." *Id.* at *1. The dissent would have followed *Kawcak*'s reasoning in construing "common interests" to require a public component that is not satisfied by a mere "business decision between two parties." *See id.* at *9–10 (Zimmerer, J., dissenting).

An argument can be made that the *Reeves* majority's rationale conflicts with our reasoning in *Bandin*. In both cases, a claimant alleged that a defendant had joined with at least one other person to unlawfully convert or misappropriate the claimant's property. In *Bandin*, we held that membership in an alleged conspiracy does not implicate the right of association, but we held in *Reeves* that "a competing [business] enterprise" is a "common interest" sufficient to implicate the right of association, even though the enterprise allegedly was founded on misappropriated property. Assuming, without deciding, that such a conflict exists, *Bandin*, as the earlier precedent, would control over later cases that do not distinguish or purport to apply it, absent a contrary decision by a higher court or by this court sitting en banc. *See Johnson v. Harris County*, No. 14-18-00784-CV, __S.W.3d__, 2020 WL 5792027, at *3 (Tex. App.—Houston [14th Dist.] Sept. 29, 2020, no pet.); *Burnett v. Sharp*, 328 S.W.3d 594, 598 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

08-19-00067-CV, __S.W.3d__, 2020 WL 4519803, at *10 (Tex. App.—El Paso Aug. 6, 2020, pet. filed) (right of association not implicated by "a private dispute over a private matter" that had "no public purpose associational interests").[18]

We apply the same reasoning here. The only communications at issue in Midtown's claims against Republic are the contract between them, the alleged representations by Republic and the Chopra Parties that they would and could fund the construction and operation of the restaurant, and disagreements about Midtown's accounting. These communications concern only a private transaction between private parties, rather than a matter of "common interest" as that expression is used in the applicable version of the TCPA. As such, the communications do not constitute an exercise of the right of association protected by the TCPA.

We overrule Republic and the Chopra Parties' first issue. Because Republic and the Chopra Parties failed to meet their initial burden to prove by a preponderance of the evidence that Midtown's claims are based on, related to, or in response to their exercise of their right of free speech, their right to petition, or their right of association, the burden never shifted to Midtown to establish a prima facie case for each element of its claims, nor did the burden then move back to Republic and the Chopra Parties to prove an affirmative defense. We accordingly do not consider Republic and the Chopra Parties' second, third, and fourth issues.

Their fifth issue, in which they contend they are entitled to recover attorney's fees, costs, expenses, and sanctions, is predicated on the successful reversal of the

---

[18] A similar issue was presented to the Supreme Court of Texas in *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 901 (Tex. 2017) (per curiam); however, because the court concluded that the private communications at issue constituted the exercise of the right of free speech, it did not reach the question of whether the communications also constituted the exercise of the right of association.

trial court's order denying their motion. Because the TCPA does not apply to Midtown's claims, we overrule Republic and the Chopra Parties' fifth issue as well.

## IV. CONCLUSION

Because Republic and the Chopra Parties failed to establish that the TCPA applies to Midtown's claims against them, we affirm the trial court's ruling denying Republic and the Chopra Parties' motion to dismiss.


/s/    Tracy Christopher
Justice


Panel consists of Justices Christopher, Jewell, and Hassan.