# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00188-CV

**Appellant, RJR Vapor Co., LLC// Cross-Appellants, Glenn Hegar, Comptroller of Public Accounts of the State of Texas; the Office of the Comptroller of Public Accounts of the State of Texas; and Ken Paxton, Attorney General of the State of Texas**

**v.**

**Appellees, Glenn Hegar, Comptroller of Public Accounts of the State of Texas; the Office of the Comptroller of Public Accounts of the State of Texas; and Ken Paxton, Attorney General of the State of Texas// Cross-Appellee, RJR Vapor Co., LLC**

---

### FROM THE 250TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-20-004023, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

---

## O P I N I O N

The statutory-construction dispute in this tax-refund case requires us to determine the meaning of the words "tobacco" and "tobacco substitute" and to resolve a dispute over the difference between "made of" and "made from." The Tax Code defines "tobacco product" as, among other things, "an article or product that is made of tobacco or a tobacco substitute and that is not a cigarette or an e-cigarette as defined by Section 161.081, Health and Safety Code." Tex. Tax Code § 155.001(15)(E). The parties join issue over whether oral nicotine products that contain nicotine isolate manufactured from tobacco are "tobacco products" as defined by the statute.

Appellant and cross-appellee RJR Vapor Co., LLC sells oral nicotine products in the form of nicotine pouches and nicotine lozenges under the brand name VELO throughout Texas. When RJR Vapor introduced the products to Texas, it had concluded that the VELO products are

not subject to the Cigars and Tobacco Products Tax. *See generally id.* §§ 155.001-.2415 (Cigars and Tobacco Products Tax). RJR Vapor believed this conclusion was supported by guidance on the Comptroller's website stating "[e]ven though nicotine is a component of tobacco, it does not meet the definition of tobacco." However, RJR Vapor later received guidance in a general information letter from the Comptroller that the VELO products are "tobacco products" under Section 155.001(15) because they contain "nicotine, which is an extract from the tobacco leaf." RJR Vapor then began paying the Cigars and Tobacco Products Tax under protest.

Soon thereafter, RJR Vapor sued appellees and cross-appellants Glenn Hegar, Comptroller of Public Accounts of the State of Texas; the Office of the Comptroller of Public Accounts of the State of Texas; and Ken Paxton, Attorney General of the State of Texas (collectively, "Comptroller") to recover the payments that it made under protest. *See id.* §§ 112.051-.060. In its suit, RJR Vapor also sought (1) a declaration that the language "made of tobacco or a tobacco substitute" within Texas Tax Code Section 155.001(15)(E) was unconstitutional and (2) a permanent injunction prohibiting the Comptroller from relying on that language to assess or collect the Cigars and Tobacco Products Tax.

On cross-motions for summary judgment, the trial court held that the products at issue are not "tobacco products" as defined by Tax Code Section 155.001(15). The trial court subsequently conducted a bench trial to resolve the refund amount owed to RJR Vapor and whether RJR Vapor was entitled to declaratory or injunctive relief. The trial court rendered judgment granting RJR Vapor a refund in the amount of $16,071.68. The trial court also declared in its judgment that the phrase "made of tobacco or a tobacco substitute" is unconstitutional both facially and as applied, but it denied RJR Vapor's request for a permanent injunction.

2

For the reasons discussed below, we affirm in part and vacate in part the trial court's judgment and dismiss RJR Vapor's declaratory and injunctive claims for lack of jurisdiction.

**BACKGROUND**

**Statute and Products at Issue**

Texas imposes the Cigars and Tobacco Products Tax on tobacco products. The tax rates on cigars are different from the tax rates on other tobacco products. *Compare* Tex. Tax Code § 155.021 (tax imposed on cigars), *with id.* § 155.0211 (tax imposed on tobacco products other than cigars). The tax on tobacco products other than cigars is imposed "when a permit holder receives tobacco products other than cigars, for the purpose of making a first sale in this state."[1] *Id.* § 155.0211(a). As defined by the Tax Code,

> "[t]obacco product" means:
>
> (A) a cigar;
>
> (B) smoking tobacco, including granulated, plug-cut, crimp-cut, ready-rubbed, and any form of tobacco suitable for smoking in a pipe or as a cigarette;
>
> (C) chewing tobacco, including Cavendish, Twist, plug, scrap, and any kind of tobacco suitable for chewing;
>
> (D) snuff or other preparations of pulverized tobacco; or

---

[1] The Tax Code establishes that "[a] person may not engage in business as a distributor, wholesaler, bonded agent, interstate warehouse, manufacturer, export warehouse, importer, or retailer [of or for tobacco products] unless the person has applied for and received the applicable permit from the comptroller." *See* Tex. Tax Code § 155.041(a); *see also id.* § 155.001(1), (6), (7), (9), (9-a), (10), (14), (16) (defining "bonded agent," "distributor," "export warehouse," "importer," "interstate warehouse," "manufacturer," "retailer," "wholesaler" for purposes of Cigars and Tobacco Products Tax).

3

(E) an article or product that is **made of tobacco or a tobacco substitute** and that is not a cigarette or an e-cigarette as defined by Section 161.081, Health and Safety Code.[2]

*Id.* § 155.001(15) (emphasis added). At issue here is whether the VELO oral nicotine pouches and lozenges distributed by RJR Vapor in Texas are taxable "tobacco products" under Section 155.001(15).

RJR Vapor presented evidence with its summary-judgment motion that the VELO pouches and lozenges contain many ingredients, including nicotine isolate.[3] The pouches use porous fleece material to portion the powdered mixture of water, nicotine isolate, sucralose, citric acid, and flavoring ingredients. They are available in mint or citrus flavors containing two different amounts of nicotine isolate (2 mg or 4 mg). The lozenges come in hard or soft form, and their ingredients include isomalt, water, nicotine isolate, flavoring, and sodium chloride. They are available in four flavors (crema, berry, dark mint, and mint), and all contain a nicotine isolate content of approximately 1.7 mg. Product users place the products in their mouths and orally

---

[2] A "cigarette" is defined as "a roll for smoking: (A) that is made of tobacco or tobacco mixed with another ingredient and wrapped or covered with a material other than tobacco; and (B) that is not a cigar." Tex. Health & Safety Code § 161.081(1) (employing same definition found in Texas Tax Code Section 154.001(2)). "Cigarettes" are taxed under the Cigarette Tax established in Chapter 154 of the Tax Code. Under the Health & Safety Code, "e-cigarette" means electronic cigarettes or other devices "that simulate[] smoking by using a mechanical heating element, battery, or electronic circuit to deliver nicotine or other substances to the individual inhaling from the device" or "a consumable liquid solution or other material aerosolized or vaporized during the use of an electronic cigarette or other device described by this subdivision." *Id.* § 161.081(1-a)(A). E-cigarettes are not currently taxed under either the Cigarette Tax or the Cigars and Tobacco Products Tax.

[3] Among other evidence, RJR Vapor submitted affidavit evidence from three tobacco-industry experts.

absorb the nicotine isolate and flavors over time (one to two hours for pouches; 15 minutes for lozenges).

According to the affidavit of Dr. Charles Garner, an RJR Vapor employee and expert, "[t]he manufacturer of [the VELO products] purchases nicotine isolate (which is derived from tobacco) from third party vendors."[4] Garner attested that neither RJR Vapor nor the manufacturer of the VELO products "processes tobacco to make the nicotine isolate incorporated into [the VELO products]."[5] He attested that RJR Vapor "does not purchase, process, or handle tobacco at any point in the distribution" of the VELO products.

Garner attested that the general process employed by RJR Vapor's vendors to create nicotine isolate is as follows:

  a. A tobacco mixture is extracted with water in a batch process. The raw water extract is subsequently extracted with an organic solvent. The resulting organic phase containing nicotine is separated and diluted, and sulfuric acid is added. The nicotine partitions in the water phase forming a 40% nicotine sulfate solution. The tobacco waste mixture is disposed of, most often given to farmers free of charge to be used as a soil enhancer. The nicotine sulfate solution is sold to another vendor for processing to make nicotine isolate.

  b. Purchased nicotine sulfate solution is acidified with sulfuric acid. Some water is distilled off from the resulting solution and the residue is filtered. The filtrate is extracted with cyclohexane. The aqueous product layer, *i.e.,* aqueous nicotine

---

[4] Garner is "an expert in toxicology, tobacco product, [oral nicotine product,] and [nicotine replacement therapy] design and modification, and tobacco product, [oral nicotine product,] and [nicotine replacement therapy] testing and evaluation." He has a B.S. in biology, an M.S. in occupational and environmental health with a focus in toxicology and industrial hygiene, and a Ph.D. in pharmaceutical sciences with a focus in toxicology and pharmacology; he has worked in the tobacco industry for over 25 years.

[5] Garner explained that while "[n]icotine is a naturally occurring constituent of tobacco," it is also found in "other members of the nightshade (*Solanaceae*) family of plants, which includes eggplants, tomatoes, potatoes and peppers." He further attested that "[o]n a commercial scale, tobacco plants are the preferred plant for obtaining nicotine isolate due to the relatively high concentrations of nicotine in tobacco plants."

sulfate solution, is treated with a sodium hydroxide solution under heating. The mixture is again extracted with cyclohexane. The aqueous layer is then discarded. From the organic layer, cyclohexane is distilled off. The remaining product is distilled under vacuum, then filtered producing nicotine isolate (with a purity of greater than 99%). The nicotine isolate is placed in drums or other containers for shipment to [RJR] Vapor LLC.

RJR Vapor's other two experts confirmed that after the process for making nicotine isolate is complete, the final product contains no part or traces of the tobacco leaf. Steve Terrell, the director of product development at Swedish Match, an RJR Vapor competitor, similarly described the steps of the chemical process used to extract nicotine isolate from tobacco. He attested, "[o]nce the chemical is extracted from the tobacco, the final product (nicotine isolate) contains no traces or matter from the tobacco leaf except for the purified nicotine." Mark Triplett, partner and founder since 1986 of a tobacco-products consulting firm "that advises tobacco industry and government leaders on how to establish viable strategies for uniform application of state tobacco laws," who has assisted state legislatures in drafting tobacco-products taxation laws, attested that "[o]nce the nicotine is extracted from tobacco, the final product contains no tobacco leaf." Triplett further attested, "Nicotine is not 'tobacco'—nicotine is merely a chemical that can be found in tobacco."

**The Comptroller's Guidance**

When RJR Vapor introduced the VELO products to Texas in 2015, its representatives researched whether the products would be subject to the Cigars and Tobacco Products Tax and concluded that the products should not be subject to the tax. However, to confirm that the products were not subject to the tax, RJR Vapor requested a General Information Letter from the Comptroller in 2018. In January 2019, the Comptroller sent RJR Vapor a General Information Letter stating that because the products contain nicotine, "which is an extract from the

tobacco leaf," they meet the statutory definition of a tobacco product. RJR Vapor representatives subsequently met with the Comptroller's representatives to explain the novel products and RJR Vapor's position that they are not tobacco products as defined by the statute. At that meeting, the Comptroller's representatives indicated that the Comptroller's position remained the same—the products are taxable.

**Procedural History**

In August 2020, RJR Vapor filed its suit against the Comptroller in the trial court, seeking a refund of the tax paid under protest; declaratory judgment that the VELO products are not "tobacco products" and thus are not subject to the Cigars and Tobacco Products Tax; declaratory judgment that the statutory language "made of tobacco or a tobacco substitute" is unconstitutional, both facially and as applied; and permanent injunctive relief based on its constitutional claims.[6] Both sides moved for partial summary judgment on the issue of whether the VELO products are "tobacco products" as defined by Tax Code Section 155.001(15). The trial court ruled that the products are not "tobacco products."

The trial court subsequently conducted a trial to resolve the refund due to RJR Vapor, the constitutionality of the phrase "made of tobacco or a tobacco substitute" contained in Section 155.001(15), and RJR Vapor's right to permanent injunctive relief. At trial, the parties stipulated to the amount of refund due to RJR Vapor. After hearing testimony from three witnesses presented by RJR Vapor, the trial court rendered its final judgment granting RJR Vapor a refund in the amount of $16,071.68. In the (corrected) final judgment signed on April 4, 2022, the trial court

---

[6] Based on the January 2019 General Information Letter and the guidance from the Comptroller's representatives, RJR Vapor began paying the Cigars and Tobacco Products Tax under protest beginning in June 2020.

ruled that the phrase "made of tobacco or a tobacco substitute" is unconstitutional both facially and as applied, but it denied RJR Vapor's request for a permanent injunction. The trial court later issued findings of fact and conclusions of law. This appeal and cross-appeal followed.

**ANALYSIS**

We turn first to the issues raised by the Comptroller in the cross-appeal, because our disposition of those issues will determine whether we need to reach the sole issue raised by RJR Vapor—whether the trial court erred by denying RJR Vapor's request for permanent injunctive relief after determining that the challenged phrase in Section 155.001(15)(E) is unconstitutional. In the cross-appeal, the Comptroller requests that we reverse the trial court's summary judgment and render judgment that the VELO pouches and lozenges are taxable "tobacco products," as defined in Section 155.001(15)(E). The Comptroller further requests that we reverse the trial court's constitutional declarations and render judgment that Section 155.001(15)(E) is constitutional on its face, as applied to VELO pouches and lozenges, and as enforced by the Comptroller. Alternatively, to the extent RJR Vapor's claim under the Equal and Uniform Clause is not a challenge to the validity of a statute, the Comptroller asks this Court to dismiss the claim for lack of jurisdiction.

If, however, we affirm the partial summary judgment that the VELO products are not taxable "tobacco products," the Comptroller asks that we render judgment that RJR Vapor's constitutional claims are moot and vacate the trial court's judgment on those claims.

**I.     Are the VELO products taxable products as defined by Section 155.001(15)(E)?**

We begin our analysis with the question at the heart of this appeal: Are the VELO nicotine pouches and lozenges "tobacco products"—that is, are they "made of tobacco or a tobacco

8

substitute"?  The Comptroller contends that the VELO products are "made of tobacco or a tobacco substitute" because they contain nicotine isolate, which the Comptroller asserts is processed tobacco or a product of tobacco, and thus, the products are "made of tobacco."  Alternatively, the Comptroller asserts that the VELO products are "made of . . . a tobacco substitute" because nicotine isolate is used in place of tobacco, as evidenced by RJR Vapor's promotion of the products as a cleaner alternative to other tobacco products such as snuff and chewing tobacco, which also contain nicotine.  In response, RJR Vapor argues that the nicotine isolate in its VELO products is not "tobacco" within the plain meaning of that word because the nicotine isolate (and therefore the VELO products) contains no tobacco leaf, and thus the products are not "made of tobacco."  RJR Vapor also contends that its products are not "made of a tobacco substitute" either under the plain meaning of the words "tobacco substitute" or as that phrase is used as a term of art within the tobacco industry.

## A.     Standard of review

We review summary judgments de novo.  *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 811 (Tex. 2019).  When both parties move for summary judgment on the same issue, we consider the summary-judgment evidence presented by both parties, determine all questions presented, and render the judgment that the trial court should have rendered if we conclude that the trial court erred.  *Id.* (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)).  Here, the parties sought partial summary judgment on the issue of whether the VELO products are "tobacco products" as defined by Tax Code Section 155.001(15).  Based on the trial court's holding that the VELO products are not "tobacco products" under the Tax Code,

9

the trial court further held that RJR Vapor is entitled to a refund of the Cigars and Tobacco Products Tax paid.

The taxpayer bears the burden of proving entitlement to a tax refund. *Hegar v. Health Care Serv. Corp.*, 652 S.W.3d 39, 43 (Tex. 2022). When the material facts are undisputed, we interpret the statute de novo. *Id.*

"As in any statutory interpretation case, '[o]ur objective is to ascertain and give effect to the Legislature's intent.'" *Id.* (quoting *In re D.S.*, 602 S.W.3d 504, 514 (Tex. 2020)). To do so, we enforce the plain meaning of statutory text, "unless a different meaning is supplied by statutory definition, is apparent from the context, or the plain meaning would lead to an absurd or nonsensical result." *Beeman v. Livingston*, 468 S.W.3d 534, 538 (Tex. 2015); *see also Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004) ("If the statutory language is unambiguous, we must interpret it according to its terms, giving meaning to the language consistent with other provisions in the statute."). We consider statutes as a whole, not their isolated provisions. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). Words and phrases must be "read in context and construed according to the rules of grammar and common usage." Tex. Gov't Code § 311.011(a). We presume that the Legislature selects the language in a statute with care and that it includes each word for a purpose and purposefully omits words not included. *TGS-NOPEC*, 340 S.W.3d at 439.

"Words that in isolation are amenable to two textually permissible interpretations are often not ambiguous in context." *Health Care Serv. Corp.*, 652 S.W.3d at 43. "If an undefined term has multiple common meanings, it is not necessarily ambiguous; rather, we will apply the definition most consistent with the context of the statutory scheme." *Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 405-06 (Tex. 2016). "[O]ur inquiry is not whether the statute has an

ambiguous scope, but whether the language itself is ambiguous." *Health Care Serv. Corp.*, 652 S.W.3d at 43. If the language of the statute proves ambiguous, however, we apply the ancient presumption in favor of the taxpayer: "The reach of an ambiguous tax statute must be construed 'strictly against the taxing authority and liberally for the taxpayer.'" *TracFone Wireless, Inc. v. Commission on State Emergency Commc'ns*, 397 S.W.3d 173, 182 (Tex. 2013) (quoting *Morris v. Houston Indep. Sch. Dist.*, 388 S.W.3d 310, 313 (Tex. 2012) (per curiam)); *see also Health Care Serv. Corp.*, 652 S.W.3d at 43. "[A]gency deference does not displace strict construction when the dispute is not over how much tax is due but, more fundamentally, whether the tax applies at all." *TracFone Wireless*, 397 S.W.3d at 182-83.

### B. Are the VELO products "made of tobacco"?

As an initial matter, we consider the plain meaning of the word "tobacco." The Legislature did not define "tobacco." The Comptroller argues that the statute differentiates between "raw tobacco" and processed tobacco by defining raw tobacco as "any part of the tobacco plant, including the tobacco leaf or stem, that is harvested from the ground and is not a tobacco product as the term is defined in this chapter." Tex. Tax Code § 155.001(13-a). Thus, the Comptroller argues, the tobacco in a taxable "tobacco product" refers to processed tobacco as opposed to raw tobacco, and moreover, the processing of the tobacco is implicit in the concept of a "tobacco product." The Comptroller contends that the nicotine isolate in the VELO products is "tobacco" because it is tobacco "that has been processed to concentrate its native nicotine."

RJR Vapor, on the other hand, urges that the plain meaning of the word "tobacco" is the leaf of the tobacco plant, relying on several dictionary definitions that include descriptions of the leaf of the tobacco plant as one of the meanings of "tobacco." For example, it cites

11

*Merriam-Webster*, which includes "the leaves of cultivated tobacco prepared for use in smoking or chewing or as snuff" and "manufactured products of tobacco (such as cigars or cigarettes)" as definitions, and the *Compact Oxford English Dictionary*, which includes "the dried nicotine-rich leaves of an American plant, used for smoking or chewing" as a definition. *Tobacco*, MERRIAM-WEBSTER.COM, last visited December 4, 2023; *Tobacco*, COMPACT OXFORD ENGLISH DICTIONARY (3rd ed. 2008). Accordingly, RJR Vapor contends that these definitions demonstrate that the plain meaning of the word "tobacco" is the leaf of the tobacco plant. RJR Vapor argues that the VELO products therefore do not contain tobacco because while the powdered form of nicotine isolate in the VELO products is manufactured from tobacco, it could theoretically be manufactured from any plant in the nightshade family, and as its experts attested, the VELO products contain no tobacco leaves or any other portion of the tobacco plant.

The Comptroller contends that the nicotine isolate in the VELO products is "tobacco" under the Tax Code because it is manufactured from tobacco, while RJR Vapor contends that it is not because no part of the tobacco plant remains in the nicotine isolate once the manufacturing process for separating the nicotine isolate from the tobacco plant is complete. Although when construing statutes we normally give an undefined term, like "tobacco" is here, its ordinary meaning, "the meaning must be in harmony and consistent with other statutory terms and '[i]f a different, more limited, or precise definition is apparent from the term's use in the context of the statute, we apply that meaning.'" *Southwest Royalties*, 500 S.W.3d at 405 (quoting *State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 180 (Tex. 2013)). In this situation, we must examine the context of the Cigars and Tobacco Products Tax to determine what definition of "tobacco" is most consistent with the statutory scheme and whether nicotine isolate qualifies as "tobacco." *See id.*

The other tobacco products covered by the Cigars and Tobacco Products Tax all contain "the leaves of cultivated tobacco prepared for use in smoking or chewing or as snuff." *Tobacco*, MERRIAM-WEBSTER.COM, last visited December 4, 2023; *see* Tex. Tax Code § 155.001(15)(A)-(D) (establishing cigars, smoking tobacco, chewing tobacco, and "snuff or other preparations of pulverized tobacco" as "tobacco products"). Although the Comptroller is correct that the statute distinguishes between "raw tobacco" and "tobacco products" and that the concept of "tobacco products" necessarily incorporates "tobacco" that has been prepared or processed in some way, that does not resolve either the question of how "tobacco" should be defined or the question of whether nicotine isolate is "tobacco." Reading Section 155.001(15)(E) in context with the other tobacco products described in Section 155.001(15), we conclude that the definition of "tobacco" that is most consistent with the statutory scheme is the leaves of cultivated tobacco plants that are prepared for use in smoking or chewing or as snuff.

Under this definition, the nicotine isolate in the VELO products does not qualify as "tobacco." While the nicotine isolate in the products is extracted from tobacco, no tobacco leaves or other parts of the tobacco plant remain as part of the nicotine isolate by the end of the manufacturing process.[7] RJR Vapor submitted evidence, and the parties agree, that this process results in nicotine isolate that has a purity greater than 99%. While the Comptroller contends that the nicotine isolate is "tobacco" "because it is tobacco that has been processed to concentrate its native nicotine," and "[t]his processed tobacco is an ingredient in VELO products," the evidence reflects that the VELO products do not contain "tobacco" as that term is used in the statute, i.e.,

---

[7] Moreover, RJR Vapor presented evidence that nicotine isolate could also be manufactured from other plants containing nicotine, like eggplants and tomatoes. In its isolate form, no part of the plant from which the nicotine came remains. A consumer cannot identify the plant source of the nicotine in the VELO products because no plant parts are in the products.

tobacco leaves prepared for oral use. Instead, they contain nicotine isolate, which is extracted from tobacco by a process that separates it from the tobacco plant and in which the tobacco waste is discarded. To put it simply, "tobacco" and "nicotine" are not synonymous. Nicotine is a chemical found in tobacco, but no part of the tobacco plant remains in nicotine isolate after the extraction process is complete.

The Comptroller also contends, based on this processing of tobacco to extract the nicotine isolate from the plant, that the VELO products are "made of" tobacco. The Comptroller asserts that the nicotine isolate is "tobacco" because the tobacco "has been processed to concentrate its native nicotine."[8] RJR Vapor argued on summary judgment and continues to urge on appeal that even though the nicotine isolate in the VELO products comes from tobacco plants, the VELO products are not "made of" tobacco. Instead, RJR Vapor contends, at best, the nicotine isolate in the products suggests only that the products are "made from" tobacco.

Courts must construe statutes according to the rules of grammar and common usage. *See* Tex. Gov't Code § 311.011(a). According to these rules, the phrases "made of" and "made from" convey different meanings. As the *Cambridge Dictionary* explains, "We use *made of* when we talk about the basic material or qualities of something. It has a meaning similar to "composed of . . . ."[9] And "[w]e often use *made from* when we talk about how something is

---

[8] We note that RJR Vapor presented summary-judgment evidence that the Comptroller took a contrary position on the Comptroller's website when providing guidance about whether e-cigarettes were tobacco products (before the Legislature specifically excepted them out of the "tobacco product" definition in 2019). The website stated, "E-cigarettes containing nicotine are not subject to the tobacco tax. *Even though nicotine is a component of tobacco, it does not meet the definition of tobacco.*" (Emphasis added.)

[9] Grammar entry for *made from, made of, made out of, made with*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/grammar/british-grammar/made-from-made-of-made-out-of-made-with (last visited December 4, 2023).

14

manufactured."[10]  RJR Vapor cites a number of print and online usage experts who concur with this explanation and further describe the distinction between "made of" and "made from."  To expand on the *Cambridge Dictionary* usage explanation, when an object is "made of" a substance, that substance stays fundamentally the same when the object is made.  To give a few examples, books are *made of* paper, a jacket is *made of* leather, and a shirt is *made of* polyester.  Alternatively, when an object is "made from" a substance, that substance is changed, typically through some sort of chemical or mechanical process, to make the object.  Thus, paper is *made from* trees, leather is *made from* cows' hides, and polyester is *made from* oil.

We presume that the Legislature purposefully used "made of" instead of "made from" in its definition of "tobacco product" and that it purposefully omitted "nicotine" from its definition.  *See TGS-NOPEC*, 340 S.W.3d at 439.  The Legislature could choose to define "tobacco product" more similarly to the federal government's definition, but it has not.  *See* 21 U.S.C.A. § 321(rr)(1) (West) (defining "tobacco product" as "any product *made or derived from tobacco*, *or containing nicotine from any source*, that is intended for human consumption, including any component, part, or accessory of a tobacco product (except for raw materials other than tobacco used in manufacturing a component, part, or accessory of a tobacco product)" (emphasis added)).  Likewise, the Legislature has demonstrated in its definition of "hemp" that it knows how to outline the parameters of products derived from a plant and to make the definition expansive when it wants to.  *See* Tex. Agric. Code § 121.001 (defining "hemp" as "the plant Cannabis sativa L. and any part of that plant, including the seeds of the plant and *all derivatives*, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol

---

[10]  *Id.*

15

concentration of not more than 0.3 percent on a dry weight basis" (emphasis added)). We take statutes as we find them and refrain from rewriting text chosen by the Legislature. *Pedernal Energy, LLC v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 492 (Tex. 2017). "[W]hen the language of a statute is clear, it is not the judicial prerogative to go behind or around that language through the guise of construing it to reach what the parties or we might believe is a better result."[11] *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 640 (Tex. 2010).

We conclude that the VELO products are not "made of tobacco." The nicotine isolate in the products is neither "tobacco" under the plain meaning of the word nor "made of" tobacco because even when it is derived from tobacco, no part of the tobacco plant remains in the isolate—the isolate is a chemically pure substance that has been separated from the plant parts, and the plant waste has been discarded.

---

[11] We acknowledge the Comptroller's concern that a decision that nicotine isolate is not a "tobacco product" within the meaning of Section 155.001(15) may cause oral nicotine products like the VELO products not to be regulated under the Health and Safety Code, which incorporates the Tax Code's definition of "tobacco product" for regulatory purposes. However, in the absence of some indication in either code that the Legislature intended "tobacco" to mean "nicotine," we are obliged to construe the word according to its plain meaning. *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 637 (Tex. 2010) ("Courts are not responsible for omissions in legislation, but we are responsible for a true and fair interpretation of the law as it is written. . . . [We] are not empowered to 'fix' the mistake by disregarding direct and clear statutory language that does not create an absurdity." (citations omitted)).

We likewise note that bills have been introduced in the Legislature to tax "nicotine products," but in the absence of passage of those bills, we decline to speculate on whether they are intended to codify or clarify existing law or to create new law. *See Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009) (Generally, "we attach no controlling significance to the Legislature's failure to enact [legislation]." (alteration in original) (quoting *Texas Emp. Comm'n v. Holberg,* 440 S.W.2d 38, 42 (Tex. 1969))).

**C.      Are the VELO products "made of . . . a tobacco substitute"?**

Again, we begin by examining the plain and common meaning of the phrase "tobacco substitute."  We have already determined that the word "tobacco" as used in the Cigars and Tobacco Products Tax is "the leaves of cultivated tobacco prepared for use in smoking or chewing or as snuff."  *Tobacco*, MERRIAM-WEBSTER.COM, last visited December 4, 2023.  A "substitute" is defined as "a person or thing that takes the place or function of another."  *Substitute*, MERRIAM-WEBSTER.COM, last visited December 4, 2023.  Thus, a "tobacco substitute" must be something that takes the place or function of "tobacco"; that is, the leaves of cultivated tobacco prepared for use in smoking or chewing or as snuff.

The Comptroller asserts that the nicotine isolate in the VELO products is a substitute for tobacco "because it replaces more traditional forms of tobacco as a source of nicotine."  The thrust of the Comptroller's argument is that because nicotine is addictive, a tobacco user seeking a substitute product will seek out only products containing nicotine, and thus, the nicotine isolate in the VELO products acts as a substitute for tobacco.  The Comptroller contends that RJR Vapor itself promotes the VELO products as an alternative to tobacco and submitted RJR Vapor's marketing materials promoting the brand in this way as summary-judgment evidence.  Those materials show that RJR Vapor markets the products as "tobacco-leaf free" and as similar to tobacco products like dip, snuff, or chewing tobacco but less obtrusive to others around the product user.  The Comptroller points in particular to a chart in RJR Vapor's marketing materials comparing three different product options: VELO, snus (a smokeless moist powder tobacco pouch), and dip (also known as snuff; a shredded, moistened smokeless tobacco product).  The chart shows that the only similarities between the three products are that they are all smoke-free and contain nicotine.  While this chart shows that consumers have different choices available to

17

them for the consumption of smoke-free *nicotine*, it does not establish that nicotine isolate is a substitute for *tobacco*, especially as that term is used within the larger context of the Cigars and Tobacco Products Tax.

As we explained in our discussion of "tobacco" above, the other tobacco products taxed under the statute all contain "the leaves of cultivated tobacco prepared for use in smoking or chewing or as snuff." *Tobacco*, MERRIAM-WEBSTER.COM, last visited December 4, 2023; *see* Tex. Tax Code § 155.001(15)(A)-(D) (establishing cigars, smoking tobacco, chewing tobacco, and "snuff or other preparations of pulverized tobacco" as "tobacco products"). Considering the context of the other products covered by the tax, and based on the plain meaning of the text, we cannot conclude that the Legislature's intent is to tax products that do not contain a substitute for tobacco leaves. *See Sunstate Equip. Co. v. Hegar*, 601 S.W.3d 685, 690 (Tex. 2020) ("Unless the statute provides a separate definition, we presume that the Legislature meant to use the ordinary meaning of a word, with each term 'interpreted consistently in every part of [the] act.'" (quoting *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002) (citation omitted)). The process of making nicotine isolate removes all parts of the tobacco leaf, leaving only the concentrated chemical compound of nicotine. The Comptroller's argument that nicotine isolate is a substitute for tobacco leaves requires us to assume that nicotine is the *only* reason consumers use tobacco products. The number and variety of tobacco products on the market disproves that assumption. If consumers cared only about obtaining nicotine, then the source would not matter.[12]

---

[12] By way of analogy, caffeine is another addictive substance that consumers seek out in many different forms. Coffee, tea, sodas, and energy drinks are all products containing caffeine, each with its devoted fans but each with different flavor profiles and effects. The analogy is not a perfect one because the caffeine in those products comes from different sources, but it illustrates the idea that something more goes into a consumer's choice of product than the desire for the concentrated chemical it contains.

Moreover, we presume that the Legislature purposefully omitted any words not included in the statute, and as previously noted, the Legislature omitted any reference to nicotine in the Cigars and Tobacco Products Tax. *See TGS-NOPEC*, 340 S.W.3d at 439.

We conclude that nicotine isolate cannot replace tobacco leaves in a product because nicotine isolate does not have the same qualities as tobacco leaves. This conclusion is further supported by RJR Vapor's summary-judgment evidence introduced through its experts that the industry defines a "tobacco substitute" as follows:

> formed of *readily available materials . . .* which is low in tars and *relatively free of nicotine*; which is low in poly-cyclics and carbonyls and is thus *characterized by good taste and aroma*; *which can be mixed in wide proportions with cured tobacco without noticeable change in the smoking characteristics of the resulting products*; which has strength, feel and mass integrity characteristics of conventionally cured tobacco *to enable processing* with conventional equipment and conventional materials *in the manufacture of cigars and cigarettes*; and *in which there is little if any deviation in the smoking characteristics, taste, and aroma from conventional cured tobacco*.[13]

(Emphases added.) Both Garner and Triplett attested that the tobacco industry began using the term "tobacco substitute" in the 1960s to describe materials that could be used as a replacement for tobacco leaves in cigarettes.[14] RJR Vapor also relies on evidence of the health organization

---

[13] MARSHALL SITTIG, *Tobacco Substitutes*, *in* CHEMICAL TECH. REV. NO. 67 1, 1-2 (1976).

[14] Garner attested as follows:

The primary purpose of tobacco substitutes is to replace some of the tobacco in cigarettes with the objective of reducing the yield of toxic compounds that are inherently produced when tobacco is burned, while maintaining the taste and sensory aspects of tobacco smoke. The most significant efforts to develop tobacco substitutes were undertaken by cigarette manufacturers, private industry, government and the public health community between the 1960s and 1980s.

Physicians for a Smoke-Free Canada's definition of "tobacco substitute," which similarly describes a variety of nontobacco cigarette filler materials that have been used to replace tobacco leaves in cigarettes.[15] Triplett attested that there are a variety of other plants that have been used as a "tobacco substitute" for smoking, including hemp cigarettes, clove cigarettes, herbal cigarettes, and lettuce cigarettes.

When "[w]ords and phrases . . . have acquired a technical or particular meaning, whether by legislative definition or otherwise," we must construe them according to that meaning. Tex. Gov't Code § 311.011(b). "[W]hen a term unknown to the law has a particular or technical meaning as applied to some art, science or trade, the court will look to the particular craft in order to ascertain its proper significance." *E.g.*, *Texas Health Harris Methodist Hosp. Fort Worth v. Featherly*, 648 S.W.3d 556, 567 (Tex. App.—Fort Worth 2022, pet. denied) (quoting *State v. Kaiser*, 822 S.W.2d 697, 700 (Tex. App.—Fort Worth 1991, pet. ref'd)); *Lloyd A. Fry Roofing Co. v. State*, 541 S.W.2d 639, 642 (Tex. App.—Dallas 1976, writ ref'd n.r.e.) (noting that when "a technical term is not defined in the statute, courts have interpreted the statutes in the light of the testimony of expert witnesses familiar with the particular art, science, or trade").

In this case, under both the plain meaning and the technical meaning advocated by RJR Vapor, we construe "tobacco substitute" to mean something to take the place or function of

---

Scientists within the tobacco industry investigated hundreds of plants including vegetables, grains, and carbonaceous materials, in search of tobacco substitutes.

[15] *Tobacco substitute, Nontobacco smoking material*, DICTIONARY OF TOBACCO TERMS, Physicians for a Smoke-Free Canada (1999).

tobacco leaves and conclude that nicotine isolate is not a "tobacco substitute." Accordingly, we conclude that the VELO products are not "made of . . . a tobacco substitute."[16]

Having concluded that the VELO products are neither made of tobacco or a tobacco substitute, we hold that they are not taxable tobacco products as defined by Section 155.001(15) and affirm the trial court's ruling on partial summary judgment that was incorporated in the final judgment. We overrule the Comptroller's first issue on cross-appeal.

## II. Are RJR Vapor's constitutional challenges to the statute moot because Section 155.001(15)(E) does not apply to the VELO products?

We turn next to the Comptroller's fifth issue on cross-appeal and consider whether our holding that the VELO products are not subject to the Cigars and Tobacco Products Tax renders RJR Vapor's constitutional claims moot.[17] We review de novo the application of the mootness doctrine. *Heckman v. Williamson County*, 369 S.W.3d 137, 149-50 (Tex. 2012). "The mootness

---

[16] To the extent that the Comptroller argues that the VELO products are a "product that is . . . a tobacco substitute," as opposed to a "product that is made of . . . a tobacco substitute," we disagree with that reading of the statutory language. Tex. Tax Code § 155.001(15)(E). "When there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series," a principle known as the series-qualifier canon. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012). In this case, "made of" applies to both "tobacco" and "a tobacco substitute." In addition, as discussed above, because the VELO products do not contain tobacco leaves or any substance that takes the place or function of tobacco leaves, they cannot be a tobacco substitute under Section 155.001(15)(E).

[17] The Comptroller contended in its amended second plea to the jurisdiction that the trial court's summary-judgment ruling that the VELO products are not "tobacco products" under the statute had rendered RJR Vapor's constitutional claims moot and not justiciable. It further argued that the UDJA did not authorize RJR Vapor's requested declaratory relief because that statute authorizes only those "whose rights, status, or other legal relations are affected by a statute" to seek a determination of the construction or validity of that statute. Tex. Civ. Prac. & Rem. Code § 37.004(a). The trial court denied the Comptroller's plea to the jurisdiction.

21

doctrine applies to cases in which a justiciable controversy exists between the parties at the time the case arose, but the live controversy ceases because of subsequent events." *Matthews v. Kountze Indep. Sch. Dist.*, 484 S.W.3d 416, 418 (Tex. 2016). A case can become moot at any time, including on appeal. *See Heckman*, 369 S.W.3d at 166-67.

When a case becomes moot, the court loses jurisdiction and cannot hear the case because any decision would constitute an advisory opinion. *State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018). However, "[a] case is not rendered moot simply because some of the issues become moot during the appellate process." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "If only some claims or issues become moot, the case remains 'live,' at least as to other claims or issues that are not moot." *State ex rel. Best*, 562 S.W.3d at 6. Thus, we may consider whether our holding on one issue has rendered other issues moot on appeal.

In essence, the Comptroller argues that because we have determined that the VELO products are not subject to the Cigars and Tobacco Products Tax, RJR Vapor no longer suffers an actual or threatened restriction under the statute, and thus it no longer has standing to maintain its constitutional challenges to Section 155.001(15)(E) or request injunctive relief from application of the tax, rendering those claims moot. *See Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 517-18 (Tex. 1995) (explaining that standing, "a necessary component of subject matter jurisdiction, requires a) a real controversy between the parties, which b) will be actually determined by the judicial declaration sought" (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993))). We are duty-bound to determine whether RJR Vapor has standing to maintain these claims on appeal because "standing is a 'prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case.'" *Garcia v. City of*

22

*Willis*, 593 S.W.3d 201, 206 (Tex. 2019) (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000)).  Otherwise, we risk issuing an advisory opinion, which would violate both separation-of-powers principles and the open-courts provision of our Texas Constitution.  *Id.*

To challenge the constitutionality of a statute, in addition to suffering some actual or threatened restriction under that statute, "the plaintiff must contend that the statute unconstitutionally restricts the *plaintiff's* rights, not somebody else's."  *Garcia*, 893 S.W.2d at 518. In this case, RJR Vapor has asserted both a facial challenge and an as-applied challenge to the statue.  Under its facial challenge, it "contends that the statute, by its terms, always operates unconstitutionally," and thus, it is necessarily contending that the statute operates unconstitutionally as to it.  *Id.*  Under its as-applied challenge, RJR Vapor argues that even if the statute is generally constitutional, it operates unconstitutionally as to RJR Vapor's VELO products. *See id.* at 518 n.16.  Under both types of challenges, because RJR Vapor is contending that Section 155.001(15)(E) operates unconstitutionally as to it, it must demonstrate that it is suffering some actual or threatened restriction under the challenged statute to establish its standing to seek declaratory and injunctive relief.  *See id.* at 518; *see also City of Willis*, 593 S.W.3d at 206 ("A plaintiff has standing to seek prospective relief only if he pleads facts establishing an injury that is 'concrete and particularized, actual or imminent, not hypothetical.'" (quoting *Heckman*, 369 S.W.3d at 155)).  The Comptroller contends that RJR Vapor cannot show a concrete, actual or imminent injury now that we have determined that the VELO products are not taxable tobacco products under Section 155.001(15).

In response, RJR Vapor asserts that its constitutional claims are not moot even if the VELO products are not taxable tobacco products because the UDJA provides prospective relief rather than the retrospective relief available under Chapter 112 of the Tax Code and thus its UDJA

23

claims do not seek a redundant remedy. However, this argument does not address RJR Vapor's lack of standing to maintain its constitutional claims. While it is well settled that "[a] request for a declaratory judgment regarding the constitutional validity of an agency action is distinct from, and therefore not redundant to, a challenge to the correctness of the agency's action," in light of our decision that the statute does not apply to the VELO products, RJR Vapor cannot establish that it is suffering any actual or threatened injury from application of the Cigars and Tobacco Products Tax. *Austin Eng'g Co.. v. Combs*, No. 03-10-00323-CV, 2011 WL 3371557, at \*9 (Tex. App.—Austin Aug. 5, 2011, no pet.) (mem. op.) (declining to address Austin Engineering's constitutional claims "as those claims may subsequently be rendered moot by proceedings in the trial court" because court was remanding to trial court for determination of fact question on issue of whether tax exemption applied to Austin Engineering). To the extent that RJR Vapor argues that it has a "concrete interest" in obtaining prospective relief because Chapter 112 of the Tax Code only provides retrospective relief, we conclude it cannot show a need for prospective relief when we have held that the Cigars and Tobacco Products Tax does not apply to the VELO products.

RJR Vapor further argues that its constitutional claims cannot be moot because the Comptroller likely will appeal any decision granting RJR Vapor a refund. In support, it cites the Texas Supreme Court's statement in *Matthews* that a party's "stance is a significant factor in the mootness analysis, and one which prevents its mootness argument from carrying much weight." 484 S.W.3d at 419. However, the facts in *Matthews* differ from the facts before us in this case. In *Mathews*, the Texas Supreme Court analyzed whether a school district's voluntary cessation of the challenged conduct rendered the challenging parties' claims for prospective declaratory and injunctive relief moot. *Id.* at 417-20. The court held that the school district's voluntary abandonment of its challenged policy provided no assurance that the district would not reinstate

24

its policy in the future, and thus it had not carried its burden of persuading the court that the challenged conduct could not reasonably be expected to recur in the future. *Id.* at 418-20.

In this case, the Comptroller has not voluntarily abandoned its interpretation of Section 155.001(15)(E) and its application of the Cigars and Tobacco Products Tax to the VELO products. Instead, we have ruled as a matter of law that the statute does not apply to the VELO products. Therefore, going forward, the Comptroller's application of the Cigars and Tobacco Products Tax will be constrained by this Court's interpretation of the statute.[18] *See, e.g., Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 163 (Tex. 2016) ("[A]s a general rule, 'a public officer has no discretion or authority to misinterpret the law.'" (quoting *In re Smith*, 333 S.W.3d 582, 585 (Tex. 2011) (orig. proceeding))).

We conclude that because we have held that the VELO products are not subject to the Cigars and Tobacco Products Tax, RJR Vapor is no longer suffering any actual or threatened restriction under the statute, and therefore, it has no standing to pursue its constitutional claims. Accordingly, we hold that RJR Vapor's claims for prospective declaratory and injunctive relief based on its constitutional challenges to the phrase "made of tobacco or a tobacco substitute" have been rendered moot by our holding that the phrase does not apply to the VELO products and thus they are not taxable tobacco products. We sustain the Comptroller's fifth issue presented on cross-appeal. We vacate the trial court's judgment on the moot issues and dismiss RJR Vapor's claims for declaratory and injunctive relief for lack of jurisdiction. *See Heckman*, 369 S.W.3d at 162.

---

[18] While RJR Vapor is correct that the Comptroller may seek review of our opinion at the Texas Supreme Court, we nevertheless may not issue an advisory opinion on RJR Vapor's claims for prospective relief. *See Garcia v. City of Willis*, 593 S.W.3d 201, 206-08 (Tex. 2019).

Having determined that RJR Vapor's claims for prospective relief have been rendered moot by our holding that Section 155.001(15)(E) does not apply to the VELO products, and that we therefore lack jurisdiction over those claims, we also lack jurisdiction to consider the Comptroller's three issues challenging the trial court's ruling that the language "made of tobacco or a tobacco substitute" is unconstitutional or RJR Vapor's sole appellate issue that the trial court erred by denying its request for permanent injunctive relief.

## CONCLUSION

We affirm that portion of the trial court's judgment concluding that the phrase "made of tobacco or a tobacco substitute" within Tax Code Section 155.001(15)(E) does not apply to the VELO products and thus they are not taxable tobacco products. We also affirm that portion of the trial court's judgment requiring the Comptroller to issue a refund with interest to RJR Vapor. We vacate the portions of the trial court's judgment declaring the phrase "made of tobacco or a tobacco substitute" unconstitutional within Tax Code Section 155.001(15)(E) and denying RJR Vapor's request for a permanent injunction. We dismiss RJR Vapor's claims for declaratory and injunctive relief for want of jurisdiction.

_____

Gisela D. Triana, Justice

Before Justices Baker, Triana, and Kelly

Affirmed in Part, Vacated in Part, Dismissed in Part

Filed: December 14, 2023